2012 WY 163

**WILSON ADVISORY COMMITTEE, a Wyoming Nonprofit Corporation, Appellant (Petitioner),**

v.

**BOARD OF COUNTY COMMISSIONERS, Teton County, Wyoming, Appellee (Respondent),**

and

**C & J, LLC, a Wyoming Limited Liability Company, Appellee (Intervenor/Respondent).**

No. S–12–0095.

Supreme Court of Wyoming.

Dec. 21, 2012.

Representing Appellant: Peter F. Moyer, Esq., Jackson, Wyoming.

Representing Appellee Board of County Commissioners, Teton County, Wyoming: Nicole G. Krieger, Deputy County Attorney, Teton County Attorney's Office, Jackson, Wyoming.

Representing C & J, LLC: No appearance.

Before KITE, C.J., and HILL, VOIGT, BURKE, and DAVIS, JJ.

DAVIS, Justice.

[¶ 1] The Teton County Board of Commissioners (the Board) approved a Final Development Plan Application by C & J, LLC (C & J). C & J owns 2.04 acres of property in Wilson, Wyoming. The northern portion of the property is zoned for commercial use, while the southern portion is zoned for a single-family residence. The plan approved by the Board allowed C & J to construct five residential units and one affordable housing unit in the single-family residential zone. It also allowed commercial parking and other commercial uses. The number of residential units permitted has since been reduced to four.

[¶ 2] Appellant Wilson Advisory Committee, a non-profit corporation representing citizens concerned about the development of Wilson, petitioned the district court for review. The district court affirmed the Board's decision, and the Wilson Advisory Committee appealed. We affirm in part and remand to require the Board to make findings called for by its own regulations.

## ISSUES

[¶ 3]   1.   Did the approved plan's increase of the overall residential density of the southern tract violate Teton County's Land Development Regulations?

2.   Did the Board make the findings required by its Land Development Regulations as a predicate to allowing more intense use of the single-family residential portion of a dual-zoned property?

3.   If so, were the Board's findings arbitrary and capricious or contrary to law?

## FACTS

[¶ 4]   C & J, LLC owns 2.04 acres of land in Wilson, Wyoming. The property originally consisted of two separate parcels, each located in a different zoning district. The northern parcel of 0.58 acres was originally zoned Auto–Urban Commercial (AC). The southern, 1.46–acre tract was zoned Neighborhood Conservation—Single Family (NC–SF), meaning that only one single-family dwelling could ordinarily be constructed on it.

[¶ 5]   In 2007, a Minor Boundary Adjustment permitted by Teton County Land Development Regulations combined the two tracts into a single parcel for development. See Teton County Land Development Regulation § 6300 (Oct. 2006) (hereinafter LDRs). Notice of this action was given to adjacent landowners. None of them contested or appealed the boundary adjustment. The property continued to be located in two different zoning districts, limiting the use of each tract to that permitted within the applicable district.

[¶ 6]   In 2008 the northern portion of the property was rezoned to Wilson Commercial (WC) by an amendment to the county's official zoning district map. The WC zoning designation was created to encourage the development of nonresidential uses which would serve the neighboring population. In contrast, NC–SF districts served to preserve the character of existing residential neighborhoods. There was no objection to or appeal from the 2008 rezoning of the northern portion of the property.

[¶ 7]   On December 22, 2010, C & J submitted a Final Development Plan Application to the Teton County Planning Department. C & J was the first entity to attempt development in the new WC zoning district. It requested approval to construct three commercial buildings, five residential units, two accessory residential units, and one affordable housing unit on the property. The plan called for five regular residential units, one affordable housing unit, and commercial parking to be built on the 1.46 acres zoned for a single-family residence under the NC–SF designation.

[¶ 8] The Teton County Planning and Zoning Commission (the Planning Commission) held two public meetings on C & J's application.[1] At the first, held on November 29, 2010, several citizens voiced concerns about the project's impact on adjacent wetlands, parking, and local traffic.

[¶ 9] The Planning Commission extended its consideration of the application to another meeting held on January 24, 2011. At that meeting, public comment included additional expressions of concern about wetland preservation and the project's compliance with zoning regulations applicable to the NC–SF parcel. The Planning Commission staff explained its belief that the 2007 boundary adjustment allowed for commercial construction on the NC–SF portion of the property in accordance with applicable LDRs and that the project's proposed location of structures allowed for mitigation of any possible adverse wetland impacts. The Planning Commission voted unanimously to recommend approval of the proposed development to the Board.

[¶ 10] C & J's application came before the Board at a public meeting held on March 1, 2011. The Board considered a Planning Commission staff report on the proposed project. The staff report indicated that the project complied with applicable LDRs, but acknowledged that local residents had raised a number of objections to the planned development. The Board postponed a decision on the project until its next regular meeting, which was to be held on March 15, 2011.

[¶ 11] In the interim, the Planning Commission staff prepared a revised report. The revised staff report included the following additional discussion of the project's compliance with the Teton County Comprehensive Plan:

> The proposal contains elements that would promote and support diverse economic and social populations that do not adversely

affect environmental quality or wildlife and scenic resources. It offers a spectrum of housing types, especially for resident workers. The development is proposed in a location that is served by existing transportation and utility infrastructure, and the intensity of use proposed for this property is consistent with the stewardship goals of this chapter.

It also described the density and location of developments located in more than one zoning district:

> Density calculations are based on the acreage in each zoning district. The more intense commercial portion of the development is located in the WC district; however, due to the presence of Edmiston Spring Creek and its associated wetlands, there is considerable residential density permitted in the portion of the property zoned NC–SF.

The revised report contained an extensive discussion of the project's impact on adjacent wetlands and recommended approval of the proposed development.

[¶ 12] At the March 15, 2011 Board meeting, counsel for Appellant Wilson Advisory Committee spoke in opposition to the project, as did some local residents. Counsel for C & J and representatives of the Planning Commission staff responded to the citizens' concerns, including those relating to environmental impacts. County Commissioner Schwartz moved to approve C & J's application, subject to a number of conditions, "based upon finding that the application meets with all applicable standards set forth in the Teton County Land Development Regulations and Comprehensive Plan." The Board approved the application subject to the adoption of written findings of fact and conclusions of law.

[¶ 13] On April 11, 2011, the Board issued its "Findings of Fact, Conclusions of Law

1. Teton County conducts a two-stage review of development applications such as the one involved in this case. The Planning Commission conducts an initial review of development applications, holds a public meeting on these applications, and submits its recommendations to the Board of County Commissioners (the Board). The Board has the power to hear, consider, and

grant or deny development applications. *See Bd. of Cnty. Commr's of Teton Cnty. v. Teton Cnty. Youth Servs., Inc.,* 652 P.2d 400, 402 (Wyo.1982) (explaining the general county planning and permit process); Teton County LDRs, *supra,* at §§ 5010, 5020 (defining the Board and Planning Commission's respective roles and decision-making authority).

and Order Granting Final Development Plan Approval." It found, among other things, the following:

10. On March 9, 2011, Planning Staff submitted a Revised Staff Report accompanied by a Memo ..., a copy of which is attached hereto as Exhibit B and made a part hereof. The Revised Staff Report reflected that the applicant had modified his site plan to avoid any encroachment into the wetland setback ....

It continued:

16. The application of C & J, LLC for Final Development Plan approval complies with all applicable provisions of the Teton County Comprehensive Plan as more fully set forth on pp. 10–11 of the staff report dated 3.9.11 (Exhibit B).

17. The application of C & J, LLC for Final Development Plan Approval complies with all applicable provisions of the Teton County Land Development Regulations as more fully set forth on pp. 12–20 of the staff report dated 3.9.11 (Exhibit B) ....

The Board approved the project with thirty-two conditions which are not relevant to this appeal.

[¶ 14] Appellant timely petitioned for review of the Board's decision by the Ninth Judicial District Court. The district court affirmed the Board's order in almost all respects, but remanded to the Board for the limited purpose of recalculating the number of residential dwelling units. At oral argument before the district court, counsel for the Board admitted that the final development plan provided for five regular residential units, but the LDRs only allowed four. Counsel further indicated this error would not affect overall square footage calculations. The Board promptly held a hearing and ordered a reduction in the number of permissible residential units from five to four without waiting for remand. All other density calcu-

lations remained unaffected, and Appellant does not challenge this modification. This minor error has therefore been corrected.[2]

[¶ 15] Appellant timely appealed the decision upholding approval of the development application. It does not take issue with the proposed density recalculation.

STANDARD OF REVIEW

[¶ 16] The Wyoming Administrative Procedure Act governs our review. *Gilbert v. Bd. of Cnty. Comm'rs of Park Cnty.*, 2010 WY 68, ¶ 10, 232 P.3d 17, 23 (Wyo.2010) ("The issues before the Court in this appeal require application of our standard for reviewing the actions of an administrative agency."); *Northfork Citizens For Responsible Dev. v. Bd. of Cnty. Comm'rs of Park Cnty.*, 2010 WY 41, ¶ 50, 228 P.3d 838, 855 (Wyo.2010) ("By definition, a board of county commissioners is an 'agency' subject to the WAPA.") (citing Wyo. Stat. Ann. § 16–3–101(b)(i); *Holding's Little America v. Bd. of Cnty. Commr's of Laramie Cnty.*, 670 P.2d 699, 701–02 (Wyo.1983)); *Bd. of Cnty. Comm'rs of Teton Cnty. v. Teton Cnty. Youth Servs.*, 652 P.2d 400, 410–12 (Wyo. 1982) (clarifying that boards of county commissioners' decisions are reviewed in the same manner as other administrative actions).

[¶ 17] Under Wyoming Rule of Appellate Procedure 12.09, our review is limited to a determination of matters specified in § 16–3–114(c) of the Wyoming Administrative Procedure Act. W.R.A.P. 12.09(a). Section 16–3–114 defines our scope of review as follows:

(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret ... statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account

---

2. In *Board of Trustees of Memorial Hospital of Sheridan County v. Martin*, 2003 WY 1, ¶ 16, 60 P.3d 1273, 1277 (Wyo.2003), we held that a district court order remanding a case to a county hospital for further proceedings was not an ap-

pealable order under Wyoming Rule of Appellate Procedure 1.05. In this case, the remand was to be for a minor correction which the Board immediately made, and we therefore reach the merits.

shall be taken of the rule of prejudicial error. The reviewing court shall:

. . .

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

. . .

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

Wyo. Stat. Ann. § 16–3–114(c) (LexisNexis 2011). As part of our review, we "give no special deference to the decision of the district court, but consider the case as if it came directly from the agency." *Gilbert*, ¶ 10, 232 P.3d at 23 (quoting *Northfork*, ¶ 16, 228 P.3d at 844).

■■■[¶ 18] Section 16–3–114(c) contains several different standards of review, not all of which apply in any given instance. *Northfork*, ¶ 17, 228 P.3d at 844–45 (citing *Dale v. S & S Builders, LLC*, 2008 WY 84, ¶¶ 8–26, 188 P.3d 554, 557–62 (Wyo.2008)). In *Northern Laramie Range Found. v. Converse Cnty. Bd. of Cnty. Comm'rs*, 2012 WY 158, ¶¶ 13–18, 290 P.3d 1063 (Wyo.2012), we reemphasized the distinction between substantial evidence review and review under the arbitrary and capricious standard which had previously been explained in *Dale*. We apply the substantial evidence standard in contested cases, with the added "safety net" analysis under the arbitrary and capricious standard. However, we apply only the arbitrary and capricious standard when reviewing agency action resulting from informal non-contested case proceedings. *Id.*

[¶ 19] The briefs in this case were filed before *Northern Laramie Range Foundation* was decided. Appellant asserted that both standards govern our review of this administrative proceeding. The Board recognized that no contested case hearing took place, but also asserted that the substantial evidence standard applies.

■■■ [¶ 20] The Board's public meetings were not formal trial-type or contested case hearings. No witnesses were sworn in or examined, comment times were limited, and the Board did not receive evidence as it would in a contested case. No statute or agency regulation provides for or requires a contested case or evidentiary hearing on development plan applications within unincorporated areas of Teton County. We will therefore review the decision resulting from this informal agency proceeding using the arbitrary and capricious standard. *See* Wyo. Stat. Ann. § 16–3–114(c)(ii)(E) (limiting application of the substantial evidence standard to "case[s] reviewed on the record of an agency hearing provided by statute"); *Northern Laramie Range Foundation*, ¶¶ 10, 18; 33 Charles A. Wright & Charles H. Koch, Jr., *Federal Practice and Procedure* § 8334 (2006) ("Arbitrariness review generally applies to the results of an informal process.").

■■■ [¶ 21] The arbitrary and capricious standard generally requires a rational basis for agency action:

The arbitrary and capricious test requires the reviewing court to review the entire record to determine whether the agency reasonably could have made its finding and order based upon all the evidence before it. The arbitrary and capricious standard is more lenient and deferential to the agency than the substantial evidence standard because it requires only that there be a rational basis for the agency's decision.

*Gilbert*, ¶ 10, 232 P.3d 17 at 24 (quoting *Dale*, ¶ 12, 188 P.3d at 559). *See also N. Mun. Distribs. Grp. v. F.E.R.C.*, 165 F.3d 935, 941 (D.C.Cir.1999). ("Upon examining the record the court inquires whether it can discern a rational connection between the facts found and the choice made by the [agency] . . . ."). This standard also works as a " 'safety net' to catch agency action which . . . is not easily categorized or fit to any one particular standard." *Dale*, ¶ 23, 188 P.3d at 561 (quoting *Newman v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2002 WY 91, ¶ 23, 49 P.3d 163, 172 (Wyo.2002)). Whether specific findings are required when the arbitrary and capricious standard is applied is addressed below.

[¶ 22] In all cases, we review an agency's conclusions of law *de novo*. *Powder River Basin Res. Council v. Wyo. Dep't of Envtl. Quality*, 2010 WY 25, ¶ 5, 226 P.3d 809, 813 (Wyo.2010) (citing *Kennedy Oil v. Dep't of Revenue*, 2008 WY 154, ¶ 7, 205 P.3d 999, 1002 (Wyo.2008)). An agency's own rules and regulations "have the force and effect of law, and an administrative agency must follow its own rules and regulations or face reversal of its action." *Northfork*, ¶ 27, 228 P.3d at 848 (citation omitted). However, "we defer to an agency's interpretation of its own rules and regulations unless that interpretation is clearly erroneous or inconsistent with the plain language of the rules." *Powder River Basin*, ¶ 6, 226 P.3d at 813.

## DISCUSSION

[¶ 23] This appeal involves three separate actions regarding the property in question. The first was the Minor Boundary Adjustment which took place in 2007. A challenge to the boundary adjustment would have had to have been made in 2007 when the decision to combine the parcels for development was made. Wyoming Rule of Appellate Procedure 12.04 imposes a thirty-day time limit for petitions for review of administrative action. This requirement is both mandatory and jurisdictional. *Chevron U.S.A., Inc. v. Dep't of Revenue*, 2007 WY 62, ¶ 7, 155 P.3d 1041, 1043 (Wyo.2007). No appeal was taken from the original boundary adjustment, and the Court need not evaluate that decision, but must instead determine which LDRs apply to it and determine the meaning of those regulations to the extent they are disputed.

[¶ 24] The second action was an amendment to the Teton County zoning map in 2008. It effectively changed the zoning of the smaller parcel from AC to WC. Like the boundary adjustment, this rezoning was not challenged at the time and cannot now be for the same reasons.

[¶ 25] The third action to be considered is the approval of the Final Development Plan. This Board decision was timely challenged and will be considered on the merits. Appellant claims this action was improper for two reasons: (1) the overall density of the devel-

opment planned in the residential portion of the property violated applicable LDRs; and (2) the Board failed to make a required finding that it had been demonstrated that the development plan approved would improve scenic views and lessen adverse environmental impacts. The Board contends that the overall density allowed was permissible under its LDRs, and that evidence exists which would support the findings necessary to permit increased density in the portion of the property zoned for a single family residence.

### A. Overall Density

[¶ 26] Wyoming Statute § 18–5–201 grants county commissioners broad authority to promulgate zoning ordinances:

> To promote the public health, safety, morals and general welfare of the county, each board of county commissioners may regulate and restrict the location and use of buildings and structures and the use, condition of use or occupancy of lands for residence, recreation, agriculture, industry, commerce, public use and other purposes in the unincorporated area of the county.

Wyo. Stat. Ann. § 18–5–201 (LexisNexis 2011); *Snake River Venture v. Bd. of Cnty. Comm'rs, Teton Cnty.*, 616 P.2d 744, 752 (Wyo.1980) ("The language [of the predecessor to Section 201] is a broad grant of authority.").

[¶ 27] This broad grant of authority derives from the "police power inherent in government, the constitution, and statutes passed pursuant to it." 1 E.C. Yokley, *Zoning Law and Practice* § 3–1 (4th ed. 2008). It includes both the express power to enact zoning ordinances, and the "implied power to do those things which would make its express power to regulate and restrict the use of buildings and land in unincorporated areas of the county meaningful." *Snake River Venture*, 616 P.2d at 752 (quoting *Schoeller v. Bd. of Cnty. Comm'rs of Park Cnty.*, 568 P.2d 869, 874 (Wyo.1977)). However, "the zoning authority of counties and municipalities is limited to that derived from state statute, and county actions inconsistent with the statutes may mandate reversal." *Northfork*, ¶ 23 n. 5, 228 P.3d at 847 n. 5.

[¶ 28]   The Board adopted the most recent version of the LDRs in October 2006. Several different sections of the LDRs govern the permissible zoning density of dual-zoned property like that involved in this case. Appellant points to LDR §§ 2520.C and 6300, and argues that "a parcel combination was used to increase density and uses by moving commercial density and uses to acreage which was and remains zoned for one single family residence."

[¶ 29]   LDR § 2520 states that "[t]he number of units permitted on a single lot or parcel in the NC–SF District shall be limited to one (1) single-family dwelling unit." LDRs, *supra*, at § 2520.A.1. The regulation further provides that "[l]ots or parcels may not be combined with other lots, parcels or tracts for the purpose of subdividing to increase density. However, subdivision for other purposes where overall existing densities are retained or reduced shall be permitted." *Id.* at § 2520.C. On a similar note, LDR § 6300 governs the permissible density of parcels combined by a Minor Boundary Adjustment:

A. **Applicability.**   Only those boundary adjustments specified below shall be permitted as a minor boundary adjustment according to this subsection....

. . .

2. **Adjustment to combine with an adjacent parcel.**   The adjustment of the boundary of a parcel not within a platted subdivision for the purpose of combining portions thereof with an adjacent parcel subject to the following:

. . .

(3) **No net increase in density.**   *The acreage transferred from one parcel to another does not allow for increased density on the subject parcels.*

*Id.* at § 6300.A.2.b(3) (emphasis added).

[¶ 30]   Appellant argues that these regulations prohibit the approved development in the larger parcel zoned for a single-family residence.   The Board responds that § 2520.C applies to subdivisions, a separate issue, and that other regulations permit increased density in the larger parcel when they are developed together.

[¶ 31]   To the extent that we must construe Teton County's Land Development Regulations to resolve the issues before us, the rules of statutory construction apply to the interpretation of administrative rules and regulations. *Bailey v. State ex rel. Wyo. Workers' Safety & Comp. Div.,* 2010 WY 152, ¶ 10, 243 P.3d 953, 956 (Wyo.2010) (citing *Powder River Basin,* ¶ 6, 226 P.3d at 813). We construe statutes as a whole, "giving effect to every word, clause, and sentence, and we construe all parts of the statute *in pari materia.*" *Redco Const. v. Profile Props., LLC,* 2012 WY 24, ¶ 26, 271 P.3d 408, 415–16 (Wyo.2012) (quoting *Cheyenne Newspapers, Inc. v. Bldg.Code Bd. of Apps. of City of Cheyenne,* 2010 WY 2, ¶ 9, 222 P.3d 158, 162 (Wyo.2010)); *see* 82 C.J.S. *Statutes* § 475 (2009) ("[A] statute is to be explained in conjunction with other statutes to the end that they may be a harmonious and consistent body of law.").

[¶ 32]   We agree with the Board that § 2520.C applies to subdivisions, and that it is therefore inapplicable in this case.   Section 6300 does apply to minor boundary adjustments, but the propriety of the adjustment in this case is not and cannot be an issue in this appeal for reasons already stated.

[¶ 33]   We have often held that a specific statute controls over a general one. *Laramie Cnty. Sch. Dist. No. One v. Cheyenne Newspapers, Inc.,* 2011 WY 55, ¶ 2, 250 P.3d 522, 525 (Wyo.2011); *Horse Creek Conservation Dist. v. State ex rel. Wyo. Att'y Gen.,* 2009 WY 143, ¶ 39, 221 P.3d 306, 318 (Wyo. 2009).   LDR § 2560 specifically addresses the permissible density of the development approved by the Board in this case:

f. **Developments in more than one zoning district.**   Where land is in the WC District and other zoning districts, the land may be designed and developed as a single development.

(1) **Density or intensity calculation.** The entire parcel of land may be used to meet minimum site area requirements in either zoning district, but the density or intensity calculations shall be based on the acreage existing in each zoning district.

LDRs, *supra*, at § 2560.A.1.f(1). Section 2560.A.1.f(1) applies here because the northern portion of the development is zoned WC, and the southern portion is zoned NC–SF. It imposes overall density limitations on dual-zoned parcels such as C & J's property. The record reflects that the square footage calculations for the overall project were done in compliance with the overall density limitations of LDR 2560.A.1.f(1):

> *What is the maximum density/square footage allowed?*
>
> The NC–SF portion of the property allowed one market single family dwelling unit with a square footage allowance of 5,892 square feet, based on the 1.43 acre base site area (BSA) of the parcel. The 0.58–acre base site area of the WC portion of the property is derived by taking the square footage of BSA (19,853) and multiplying it by an FAR[3] of 0.35, which allows 6,942 square feet.
>
> The LDRs permit combining the total allowable development on parcels with more than one zoning district, for a total FAR allowed on the site of 12,834, with a requirement that a minimum of 50% of the FAR be commercial. The applicant is proposing a total of 12,790 square feet of floor area on the property. The proposal includes 6,390 square feet of residential floor area. The ARUs [Accessory Residential Units] and the affordable unit are not included in the FAR, as they are exempt from FAR pursuant to Section 2560. The applicant is proposing 6,400 square feet of commercial square footage, which is *less than the 6,492 square feet of allowable commercial and is* just over 50% of the total FAR.

[¶ 34] However, LDR § 2560.A.1.f. also governs the location of the proposed development as between the differently-zoned parcels:

> f. **Developments in more than one zoning district.** Where land is in the WC District and other zoning districts, the land may be designed and developed as a single development.
>
> . . .
>
> (2) **Locate in area of higher intensity use.** Development shall be located in the district that is designated for higher intensity use. *This standard may be deviated from if it can be demonstrated that the location proposed will improve scenic views and lessen adverse environmental impacts.*

LDRs, *supra*, at § 2560.A.1.f(2) (emphasis added). The first sentence of subparagraph (2) allows development of the entire parcel based on the combined density of that allowed on the two separately zoned tracts. Any increased development must generally be located in the district zoned for higher intensity use. In this case, that part of the regulation would require any increase in density to be in the smaller parcel zoned Wilson Commercial. However, commercial development can occur in the larger NC–SF portion of the property if "it can be demonstrated that the location proposed will improve scenic views and lessen adverse environmental impacts." *See id.*

[¶ 35] As to the overall square footage calculations, the Board and the Planning Commission on which it relied have considerable experience and expertise in dealing with matters of zoning density. *See* Wyo. Stat. Ann. § 18–5–208(a) (LexisNexis Supp. 2012) (describing how with inter-agency coordination and planning efforts, "a board of county commissioners shall be deemed to have special expertise on all subject matters for which it has statutory responsibility"); *Bonnie M. Quinn Revocable Trust v. SRW, Inc.,* 2004 WY 65, ¶ 18, 91 P.3d 146, 151 (Wyo.2004)

---

**3.** It is unclear from the available record what the "FAR" acronym stands for. However, the New York City Department of City Planning provides a helpful description of this term:

> The floor area ratio is the principal bulk regulation controlling the size of buildings. FAR is the ratio of total building floor area to the area of its zoning lot. Each zoning district has an FAR which, when multiplied by the lot area of the zoning lot, produces the maximum amount

of floor area allowable on that zoning lot. For example, on a 10,000 square foot zoning lot in a district with a maximum FAR of 1.0, the floor area on the zoning lot cannot exceed 10,000 square feet.

New York City Department of City Planning, *Zoning Glossary*, http://www.nyc.gov/html/dcp/html/zone/glossary.shtml (last visited Dec. 17, 2012).

("The board of county commissioners and its lower level adjudicators have the expertise and are best situated to supply those definitions [of ambiguous terms in a revocable trust] within the meaning of the zoning resolution."). The calculations require substantial agency expertise and have been corrected after an initial error as to the number of permissible residential units. *See Ninilchik Traditional Council v. United States,* 227 F.3d 1186, 1194 (9th Cir.2000) ("[D]eference is especially appropriate here as the challenged decision implicates substantial agency expertise."). The overall density calculations are not arbitrary, capricious, or contrary to the applicable regulations.

## B. Required Findings under LDR § 2560.-A.1.f(2)

[¶ 36] Whether the Board was required to make a specific finding as to improvement of scenic views and lessening of adverse environmental impacts, and whether its decision in that respect was arbitrary and capricious are separate questions. In a series of recent cases, we have examined an agency's failure to provide necessary findings of fact. *See, e.g., Decker v. State ex rel. Wyo. Med. Comm'n,* 2005 WY 160, ¶¶ 24–25, 36, 124 P.3d 686, 694, 697 (Wyo.2005) (reversing and remanding a formal adjudication of the Medical Commission for its failure "to make findings that adequately explain the rationale for [its] decision"); *Olivas v. State ex rel. Workers' Safety & Comp. Div.,* 2006 WY 29, ¶¶ 10, 16–19, 130 P.3d 476, 481, 485–86 (Wyo.2006) (reversing and remanding a hearing examiner's denial of disability benefits because a lack of necessary factual findings "inhibits our ability to properly perform our review on appeal"); *Cotton v. McCulloh,* 2005 WY 159, ¶¶ 40–41, 125 P.3d 252, 265 (Wyo.2005) (affirming an agency's decision following a formal arbitration proceeding because it "[could] not be characterized as arbitrary or capricious for failing to make adequate findings of fact and conclusions of law"); *Padilla v. State ex rel. Wyo. Workers' Safety & Comp. Div.,* 2004 WY 10, ¶¶ 3, 6, 84 P.3d 960, 962 (Wyo.2004) (reviewing a formal proceeding for workers' compensation benefits under the "umbrella of arbitrary and capricious action" for "potential mistakes such as inconsis-tent or incomplete findings of fact"). These cases repeatedly emphasize how an agency's failure to make required findings inhibits our ability to review the issues on appeal.

[¶ 37] However, these cases were appeals from administrative decisions rendered in contested case or similar formal proceedings. The plain language of § 16–3–110 requires agencies to make factual findings in contested case hearings. Wyo. Stat. Ann. § 16–3–110 (LexisNexis 2011) ("A final decision or order adverse to a party in a contested case shall ... include findings of fact and conclusions of law separately stated."). Moreover, we review these formal proceedings for substantial evidence first and foremost, resorting to the arbitrariness standard only as a " 'safety net' to catch agency action which ... is not easily categorized or fit to any one particular standard." *Dale,* ¶ 23, 188 P.3d at 561 (quoting *Newman,* ¶ 23, 49 P.3d at 172). If and when specific findings are required in an informal proceeding reviewed under the arbitrary and capricious standard has not been clearly established.

[¶ 38] A United States Supreme Court administrative law case provides some guidance for resolution of this issue. *See Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), *superseded by statute on other grounds,* Pub.L. 94–974, 90 Stat. 2721 (1976), *as stated in Califano v. Sanders,* 430 U.S. 99, 104–05, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). In *Overton Park,* a number of citizens and conservation groups challenged a federal agency's authorization of funds to build an interstate highway through a public park in Tennessee. *Id.* at 406, 91 S.Ct. at 818. Upon appeal, the Supreme Court reviewed this "non-adjudicatory, quasi-legislative" proceeding to determine whether the agency acted arbitrarily or capriciously. *Id.* at 414–15, 91 S.Ct. at 822–23. Applying that standard of review, the Supreme Court found as follows:

> The final inquiry is whether the Secretary's action followed the necessary procedural requirements. Here the only procedural error alleged is the failure of the Secretary to make formal findings and

state his reason for allowing the highway to be built through the park.

Undoubtedly, review of the Secretary's action is hampered by his failure to make such findings, but the absence of formal findings does not necessarily require that the case be remanded to the Secretary. **Neither the Department of Transportation Act nor the Federal–Aid Highway Act requires such formal findings.** Moreover, the Administrative Procedure Act requirements that there be formal findings in certain rulemaking and adjudicatory proceedings do not apply to the Secretary's action here.

*Id.* at 417, 91 S.Ct. at 824 (emphasis added).

[¶ 39] The Court also noted that the Department of Transportation (DOT) had adopted a general order which did require specific findings, but that it did so after DOT had made the decision in that case.[4] It remanded the case to the district court for a review of the record on which the DOT decision had been made, because that court had relied on affidavits not before the DOT instead of the actual administrative record. It suggested that perhaps the district judge might choose to require the Secretary of Transportation to provide some explanation for the DOT's decision, and that the Secretary might simply prepare the formal findings the DOT order required. *Id.* at 417–20, 91 S.Ct. at 824–26.

[¶ 40] *Overton Park* stands for the proposition that an agency need not always make specific findings in an informal administrative proceeding, although they may be necessary to permit review. However, if a statute or regulation requires specific findings, they must be made. As already discussed, agencies are required to follow their own regulations. *Northfork*, ¶ 27, 228 P.3d at 848; *MB v. Laramie County Dep't of Family Servs.*, 933 P.2d 1126, 1130 (Wyo. 1997). If an agency's regulations require findings to be made after an informal proceeding, the Court cannot adequately review a decision for arbitrariness and caprice without a finding complying with the regulation's requirements.

[¶ 41] Administrative law treatises lend further support to the notion that agencies may be required to make factual findings in informal proceedings if required to do so by their own regulations. *See* Alfred C. Aman, Jr. & William T. Mayton, *Administrative Law* § 13.5, at 467 (2d ed. 2001) (describing a "convergence theory" followed by some courts, in which the arbitrary and capricious test governs the need for factual support in certain informal proceedings); 3 Charles H. Koch, Jr., *Administrative Law & Practice* § 10.4, at 37 (2d ed. 1997) ("In the review of an [informal] adjudicative decision, arbitrariness review must focus attention on the findings of specific facts."); 6 Jacob A. Stein et al., *Administrative Law* § 51.03 (2008) ("While this standard [arbitrary and capricious] is often applied to cases requiring no formal record, the agency must still provide the court with some factual basis for its decision.").

[¶ 42] In this case, LDR § 2560 governs whether a development permit may authorize greater density in the larger portion of the property. The regulation allows that increase in density only if "it can be demonstrated that the location proposed will improve scenic views and lessen adverse environmental impacts." *See* LDRs, *supra,* at § 2560.A.1.f(2). A requirement that certain factors be demonstrated obligates the agency to decide whether they have been and to make a finding reflecting its decision.[5] *Cal. Energy Comm'n v. Dep't of Energy*, 585 F.3d 1143, 1153–54 (9th Cir.2009) (interpreting a statute that required establishment of certain facts to require an agency to make adequate findings of such facts) (citing 42 U.S.C. § 6297(d)(4) (2007)); *Dysert v. United States Sec'y of Labor*, 105 F.3d 607, 609–10 (11th Cir.1997) (upholding an agency's reasonable interpretation of statutory language where the agency found in part that the word "demonstrate" means to "prove or make evident by reasoning or adducing evidence"); *Phil-*

---

4. The order was treated as having the force of a regulation.

5. Whether a requirement that an agency must only consider scenic views and environmental impacts would obligate it to make a specific finding is an issue not before us in this case.

*lips v. Phillips,* 219 S.W.2d 249, 270 (Mo.Ct. App.1949) (defining "demonstrated" as "to show outwardly by sign or to give visible evidence of") (citing Webster's International Dictionary (1947)); *Cent. Va. Obstetrics & Gynecology Assocs., P.C. v. Whitfield,* 42 Va. App. 264, 277, 590 S.E.2d 631, 638 (2004) ("To demonstrate a fact [as required under the relevant statute] to the satisfaction of the factfinder means to *persuade* the actual factfinder, not merely to demonstrate the plausibility of the proffered fact to a sufficient degree that any rational factfinder *could be persuaded.*").

[¶ 43] We recently clarified our view of the word "and" with regards to statutory interpretation, and not surprisingly found that "and" means "and:"

> We have previously recognized, when interpreting statutes, that the word "and" is conjunctive. *Clark v. State ex rel. Wyo. Workers' Safety and Comp. Div.,* 968 P.2d 436, 438 (Wyo.1998). Webster's recognizes that the word "and" is "used in logic as a sentential connective that forms a complex sentence which is *true only if both constituent sentences are true.*" Webster's New Collegiate Dictionary 43 (1977) (emphasis added).

*Prickett v. Prickett,* 2007 WY 153, ¶ 11, 167 P.3d 661, 664 (Wyo.2007). The regulation's use of the conjunction "and" thus requires a finding of both: (1) improvement of scenic views; and (2) lessening of environmental impacts. *See Powder River Basin,* ¶ 30, 226 P.3d at 819 ("The rules of statutory interpretation also apply to the interpretation of administrative rules and regulations.") (quoting *Powder River Coal Co. v. Wyo. State Bd. of Equalization,* 2002 WY 5, ¶ 6, 38 P.3d 423, 426 (Wyo.2002)).

[¶ 44] The Court interprets the LDR in question to require a demonstration that the proposed development's density would improve scenic views and reduce environmental impacts when compared to those which would result from development consistent with each parcel's zoning. It can hardly be read otherwise—there is no requirement that the development improve scenic views and reduce environmental impacts in the abstract if the parcels are developed consistent with their specific existing zoning. With that in mind, we scrutinize the record for the required findings.

### 1. *Improvement of Scenic Views*

[¶ 45] The record does contain some discussion of the project's impact on scenic views in Teton County. In a letter to the Planning Commission attached to its initial staff report, Kathy Harrington, a local resident, commented that "[t]he size of this property does not lend itself to a design of this magnitude." C & J's Final Development Plan Application also described the project's overall visual impact:

**Compliance with Wilson Commercial Standards:**

. . .

**Development in more than one zone district:** The applicant has made every effort to keep as much of the development out of the NC zone district as possible, while providing for individual residential units that maintain the community character of Wilson, *rather than providing units that are all incorporated in a single, 6,000 plus square foot monolithic structure.*

[¶ 46] A design sketch created by the developer demonstrates that the project involved a number of small two-story buildings, rather than a taller commercial structure. The staff may have believed that the views provided by the proposed project were better than they would have been if the developer had built a large, monolithic structure on the portion of the property zoned for a single-family residence. But the staff or Board's reference to that evidence does not constitute a finding that scenic views were improved over those which would have resulted if the smaller WC-zoned parcel was developed in a manner consistent with the existing zoning. The Board argues on appeal that permitting a number of smaller structures on the larger parcel would provide a better view than if a multi-story structure were built on the smaller parcel zoned WC. This may be true, but it is an argument unrelated to a finding.

[¶ 47] As already noted, the Board's order indicated only that "[t]he application of C & J, LLC for Final Development Plan Ap-

proval complies with all applicable provisions of the Teton County Land Development Regulations as more fully set forth on pp. 12–20 of the staff report." That language might be sufficient to adopt a conclusion made by the staff or Planning Commission if the report contained the proper determination. However, the staff report included only the following statement in this respect:

> Density calculations are based on the acreage in each zoning district. The more intense commercial portion of the development is located in the WC district; however, due to the presence of Edmiston Spring Creek and its associated wetlands, there is considerable residential density permitted in the portion of the property zoned NC–SF.

This portion of the staff report does not amount to a staff finding as to whether the project would improve scenic views as required by LDR § 2560.A.1.f(2); it does not even refer to that topic. Consequently, it was insufficient to comply with the applicable regulation even if we could say it was adopted by the general language of the Board's order.

[¶ 48] The Board argues that we should uphold its decision because of: (1) a requirement that the buildings be soil-colored; and (2) a finding that the proposed development complied with applicable portions of the Teton County Comprehensive Plan. The requirement of soil-colored buildings does not amount to a finding that the proponent of the proposed location has shown that it will improve scenic views. In fact, LDR § 2560.-A.7.a already requires the use of "muted colors and earth hues" for all buildings constructed in the WC district. The general statement that the project complied with all requirements is not the specific finding as to the scenic views that the Board required by its own regulations. As counsel for the Board conceded in argument, the same statement would be found in every approved application.

## 2. Lessening Adverse Environmental Impacts

[¶ 49] The initial staff report described a number of written objections to the develop-ment from local residents, some of which were based on concerns about adverse environmental consequences. Local citizens also provided public comment on what they perceived to be the project's negative environmental impacts. The Planning Commission's revised report recommending approval of the project contained the following statements which relate to environmental concerns:

> Staff recommends the applicant mitigate for wetland impacts along Edmiston Spring Creek at a rate of 2:1 on site. Mitigation for wetland impacts for this essential crossing will serve as a public benefit to the community by creating additional wetlands that will help buffer Edmiston Spring Creek, a tributary of Fish Creek.
>
> . . .
>
> **Are all wetlands on and adjacent to the applicant's property being protected?**
>
> . . . All the proposed development is outside of the wetlands and wetland setback associated with Edmiston Spring Creek, which runs through the western portion of the subject property. . . .
>
> . . .
>
> After hearing concerns from neighbors and the Board about impacts to the Ward property wetland setback, the applicant revised the site plan to meet all wetland setback requirements . . . .

[¶ 50] The Board considered these concerns at the March 1, 2011 public meeting, as reflected in the minutes of that meeting:

> Another key issue was wetlands. The project met all setbacks from wetlands found on the property itself. A wetland delineation was performed on the property. The top three commercial units touch the wetland setback. Wetlands were found on the adjacent property to the east (Ward property), which came to light through public comment. The road was placed about 18–20 feet from the wetlands on the Ward property which was within the thirty foot setback.

[¶ 51] As already discussed in connection with the issue of scenic views, the Board's findings and conclusions contained only a general statement that "[t]he application of C & J, LLC for Final Development Plan Ap-

proval complies with all applicable provisions of the Teton County Land Development Regulations as more fully set forth on pp. 12–20 of the staff report."

[¶ 52]   The Board also referred to a number of pages in the staff report which might support the conclusion that the plan would mitigate wetland impacts.   Unfortunately, the report is not clear as to whether the development's proposed location would lessen adverse environmental impacts over those which might occur if each parcel were developed within the limitations of the applicable zoning regulations.   The record is likewise unclear as to whether the applicant would have been required to take the same steps to reduce wetland and environmental impacts if density remained as permitted under the zoning for each portion of the property.   The Board did not make findings as to other environmental impacts.

### C.   Absence of Required Findings

[¶ 53]   While there may be information in the record which would support a finding that the proposed development improved scenic views and lessened adverse environmental impacts, deciding whether the record justifies making those findings in the first instance is the Board's task, and not that of the courts.   *See JSG Trading Corp. v. U.S. Dep't of Agric.,* 176 F.3d 536, 546 (D.C.Cir. 1999) ("This court, of course, cannot sift through the record evidence to find support for the result reached by the agency.") (citing *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 50, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983) ("It is well established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself.")); *Teton County Youth Services,* 652 P.2d at 416 (explaining how agencies are responsible for developing a record sufficient for meaningful judicial review).

[¶ 54]   At oral argument, counsel for the Board argued that it would be an undue burden to require it to make more than the general finding it did due to the large number of applications for site plans it must review, analyze, and approve or deny.   As noted above, the Board had considerable dis-cretion in the formulation of its land development regulations.   It chose to require that when a combined parcel is dual-zoned, the development in each zone can exceed the applicable zoning intensity only upon a demonstration that the location would improve scenic views and lessen adverse environmental impacts.   As the Board imposed this limitation on itself, it is not too much to require that the necessary finding be made in this particular circumstance so that the Court can determine if the Board acted arbitrarily and capriciously, or whether it instead acted reasonably and followed its own rules.   *See Sierra Club v. Johnson,* 436 F.3d 1269, 1279–80 (11th Cir.2006) (reversing and remanding an informal permit adjudication because the EPA acted arbitrarily and capriciously when it failed to abide by its own regulations); *Northfork,* ¶ 27, 228 P.3d at 848 (requiring administrative agencies to follow their own rules and regulations).

[¶ 55]   Contrary to the Board's assertions, the project's compliance with applicable portions of the Teton County Comprehensive Plan is also irrelevant to the issue presented here.   Findings on the project's general compatibility with the Comprehensive Plan are no substitute for the specific findings required by the county's own land development regulations.   *Ford v. Bd. of Cnty. Comm'rs of Converse Cnty.,* 924 P.2d 91, 95 (Wyo.1996) ("A comprehensive plan should not be confused with, or used as a substitute for, comprehensive zoning, nor may a comprehensive plan be equated with comprehensive zoning in legal significance.").

[¶ 56]   We conclude that the Board did not make the necessary finding that it had been "demonstrated that the location proposed will improve scenic views and lessen adverse environmental impacts" pursuant to LDR § 2560.A.1.f.(2), and this lack of necessary findings renders the record insufficient to permit judicial review.   *See Olivas,* ¶¶ 17–19, 130 P.3d at 485–86 (describing how an agency's failure to make basic findings of fact on material issues inhibits any kind of meaningful judicial review).   *See also Nat'l Ass'n of Home Builders v. Defenders of Wildlife,* 551 U.S. 644, 658, 127 S.Ct. 2518, 2529–30, 168 L.Ed.2d 467 (2007) (holding an agency's

decisions are arbitrary and capricious if it fails to consider an important aspect of the problem); *Perry v. United Food & Commercial Workers Dist. Unions 405 & 442,* 64 F.3d 238, 242 (6th Cir.1995) (explaining how the arbitrariness standard ensures that reasoned explanation supports agencies' final decisions).

[¶ 57] On remand, the Board must make findings as to whether or not the proposed location and density improves scenic views and lessens adverse environmental impacts. *See Ebzery v. City of Sheridan,* 982 P.2d 1251, 1254 (Wyo.1999) ("In cases where the findings do not adequately explain the rationale for the agency's decision, we remand the matter to the agency so that it can make additional findings."); 33 Wright & Koch, *supra,* § 8372, at 289 ("Where a court finds that the agency factfinding is inadequate but that the agency has the procedural authority to correct the inadequacy then the court's proper function is to return the matter to the agency with instructions as to how to correct the inadequacy."). In reaching this conclusion, we must emphasize that not every informal agency adjudication must be supported by specific findings when reviewed under the arbitrary and capricious standard. This opinion decides only that those findings must be made when they are required by an agency regulation.

## CONCLUSION

[¶ 58] For the reasons stated above, we remand the matter to the district court with instructions to further remand to the Board to decide whether or not the record before it supports findings required by LDR § 2560.-A.1.f. We affirm the district court as to all other issues presented by this appeal.