UNITED STATES of America, Appellee,

v.

**Lavell WALLACE, Appellant.**

No. 96–1273.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 10, 1996.

Decided Dec. 10, 1996.

Denise Frost, Omaha, NE, argued (Jerold V. Fennell, on the brief), for appellant.

Michael P. Norris, Asst. U.S. Atty., Omaha, NE, argued, for appellee.

Before WOLLMAN, Circuit Judge, HENLEY, Senior Circuit Judge, and HANSEN, Circuit Judge.

HENLEY, Senior Circuit Judge.

Lavell Wallace appeals from a judgment of the district court[1] entered upon a conditional plea of guilty to possession with the intent to distribute crack cocaine in violation of 21 U.S.C. § 841(a)(1). We affirm.

On March 10, 1995, Trooper Andy Allen of the Nebraska State Patrol (NSP) saw a Lincoln Continental speeding on the interstate. He followed the car as it pulled off the interstate into a gasoline station. Allen saw a woman and a boy get out of the car and go into the station. Allen approached Wallace, who was the driver, and asked for his driver's license, which was produced. After Allen informed Wallace he was speeding, Wallace explained he did so because his family had to use a bathroom. Allen gave Wallace a warning citation but asked if any weapons or drugs were in the car. Wallace said no, and Allen asked if he could search the car. Wallace replied that a search "wouldn't be a problem."[2] Wallace then opened the trunk by operating a trunk release inside the car. On looking in the trunk, Allen saw about a half dozen bags and told Wallace he would need assistance in the search. Allen radioed for help from his patrol car. As he was walking back to the Lincoln, Allen saw the car, with Wallace driving and his wife and son as passengers, pull away and run a stop sign.

A high-speed chase ensued. After about twenty miles with speeds up to 135 miles an hour, the car ran over tire spikes which the NSP had laid. Although all four tires were shredded, the car continued on for about three-quarters of a mile before it finally came to a stop. Wallace and his wife were arrested and a tow-truck was called. Before the truck arrived, a drug detection dog alerted officers to the presence of drugs in a bag in the trunk. On looking in the bag, officer Gerald Schenck saw five or six packages in it. He took one of the packages out of the bag, opened it, and saw what appeared to be marijuana. Schenck put the package back in the bag. After the car was towed, Schenck conducted an inventory search and found almost a kilogram of crack cocaine in another package in the bag.

Wallace was arrested on a variety of state charges, including reckless driving. Subsequently Wallace was charged in a federal indictment with possession with the intent to distribute crack cocaine. Wallace filed a motion to suppress, contending that the roadside search of the car was not supported by probable cause and that the inventory search was unlawful. After a hearing, a magistrate judge denied the motion, holding that the roadside search of the trunk was supported by probable cause. In the alternative, the magistrate judge held that the drugs would have been inevitably discovered during a law-

---

1. The Honorable Thomas M. Shanahan, United States District Judge for the District of Nebraska.

2. We note that in *Ohio v. Robinette*, — U.S. —, at —, 117 S.Ct. 417, 419–20, 136 L.Ed.2d 347 (1996), the Supreme Court recently held that the Fourth Amendment did not require "that a lawfully seized defendant ... be advised that he is 'free to go' before his consent to search will be recognized as voluntary."

ful inventory search of the car. Wallace filed objections. On de novo review, the district court disagreed with the magistrate judge that the roadside search was supported by probable cause. However, the district court agreed that the inventory search was lawful and accordingly denied the suppression motion.

In the circumstances of this case, we are inclined to agree with the magistrate judge that probable cause supported the roadside search. *See United States v. Wadley*, 59 F.3d 510, 512–13 (5th Cir.1995) ("in combination with other facts and circumstances, flight from an officer may create probable cause where the defendant persistently attempts to evade capture"), *cert. denied*, —— U.S. ——, 117 S.Ct. 240, 136 L.Ed.2d 169 (1996). However, because we hold that the inventory search was lawful, we need not address the probable cause issue.[3]

■ It is well established that "[t]he police are not precluded from conducting inventory searches when they lawfully impound the vehicle of an individual that they also happen to suspect is involved in illegal activity." *United States v. Marshall*, 986 F.2d 1171, 1175–76 (8th Cir.1993). In other words, "[a]s long as impoundment pursuant to the community caretaking [or public safety] function is not a mere subterfuge for investigation, the coexistence of investigatory and caretaking [or public safety] motives will not invalidate the search." *Id.* at 1176 (quoting *United States v. Rodriguez–Morales*, 929 F.2d 780, 787 (1st Cir.1991), *cert. denied*, 502 U.S. 1030, 112 S.Ct. 868, 116 L.Ed.2d 774 (1992)).[4] In *Colorado v. Bertine*, 479 U.S. 367, 374, 107

S.Ct. 738, 742, 93 L.Ed.2d 739 (1987), the Supreme Court held that "reasonable police regulations relating to inventory procedures administered in good faith satisfy the Fourth Amendment." At the suppression hearing, the government introduced the NSP impoundment and inventory policy. The policy provides that a vehicle is subject to impoundment if it is "an obstruction or a traffic hazard, ... evidence of a crime committed," or the driver is "arrested and taken into custody and the vehicle is not lawfully parked at subject's residence." The policy further provides that an unimpaired driver "should be allowed to provide for lawful and responsible disposition of the vehicle, provided, such disposition does not delay the officer in performance of his/her duties." As to inventory, the policy provides that an officer "shall ... inventory the contents of the vehicle," including an "examination of the contents of any containers within the vehicle."

■ On appeal, as he did in the district court, Wallace argues that the officers acted in bad faith in impounding the car. Wallace notes that at the suppression hearing Allen acknowledged that under the NSP policy if a driver is arrested an officer might release a vehicle to a passenger, if the passenger was a registered driver and was not arrested. Wallace then argues that his wife was arrested as a pretext so that the officers would not have to release the car to her. We need not decide the question whether Mrs. Wallace's arrest was pretextual.[5] Allen testified that even if Mrs. Wallace had not been arrested the car would not have been released to her. The district court credited Allen's testimony,

3. We note that the district court and the magistrate judge apparently believed that the crack cocaine was discovered during the roadside search. However, Schenck testified that he discovered the crack cocaine during the inventory search after the car was towed.

4. In *South Dakota v. Opperman*, 428 U.S. 364, 368, 96 S.Ct. 3092, 3096–97, 49 L.Ed.2d 1000 (1976), the Supreme Court explained that impoundment serves public safety interests and "community caretaking functions." The Court also explained that an inventory search is not "exclusively for the protection of the car owner." *Id.* at 376 n. 10, 96 S.Ct. at 3100 n. 10. The Court stated that "[t]he protection of the municipality and public officers from claims of lost or

stolen property and the protection of the public from vandals who might find a firearm, ... or ... contraband drugs, are also crucial." *Id.* (internal citation omitted).

5. In *Whren v. United States*, —— U.S. ——, ——, 116 S.Ct. 1769, 1773, 135 L.Ed.2d 89 (1996), the Supreme Court indicated that a showing of pretext will not invalidate a search or arrest supported by probable cause. However, the Court stated that because an inventory search is an exception to the probable cause requirement, such a search may be invalidated if the police "'acted in bad faith or for the sole purpose of investigation.'" *Id.* (quoting *Bertine*, 479 U.S. at 372, 107 S.Ct. at 741).

noting that the totally disabled car was subject to impoundment pursuant to the NSP policy because not only was it a traffic hazard, but was also the primary physical evidence of the crime of reckless driving. Thus, as the district court found, Allen did not act in bad faith in impounding the car.

This case is somewhat similar to *United States v. Agofsky,* 20 F.3d 866 (8th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 363, 130 L.Ed.2d 316 (1994). In that case, an impoundment policy provided that an arrestee "be given an opportunity to get some responsible person to take charge of the vehicle[,]" but that "[i]f no responsible person [wa]s found within a reasonable time, the vehicle w[ould] be impounded." *Id.* at 873 (internal quotation omitted). We held that an officer did not act in bad faith in refusing to wait for forty-five minutes so that defendant's friend could pick up the car.

■ On appeal, Wallace also argues that the search of his trunk was unreasonable because the NSP written policy did not expressly provide that officers shall inventory locked trunks. However, it appears that Wallace did not raise this issue below. The magistrate judge's report states that Wallace "does not question the legality of the inventory once there had been a lawful impoundment of a vehicle" and Wallace did not object to this statement in the district court. We have nonetheless reviewed Wallace's argument regarding the scope of the inventory search and find it is without merit.

Although it is somewhat unclear from the testimony at the evidentiary hearing when the trunk was opened, Schenck testified that the trunk was open when the drug detection dog alerted officers to the possible presence of drugs in the trunk. In any event, Schenck testified that before the car was transported an officer would have had to open the trunk

to make sure that the car was safe to transport. *See United States v. Como,* 53 F.3d 87, 92 (5th Cir.1995) ("[p]olice may lawfully conduct [inventory] searches while the vehicle is still on the highway awaiting towing") (internal quotation omitted), *cert. denied,* —— U.S. ——, 116 S.Ct. 714, 133 L.Ed.2d 668 (1996). Schenck noted that in his experience a loaded firearm or explosive in a trunk could discharge and injure, among others, the tow-truck operator. "Allowing an officer to exercise his judgment based on the concerns related to the objectives of an inventory search does not violate the Fourth Amendment." *Id. See United States v. Mays,* 982 F.2d 319, 321 (8th Cir.) ("police made an informed and reasonable decision" to conduct inventory search of car at scene of crime in order "to ensure that any dangerous instrumentalities did not fall into another person's hands"), *cert. denied,* 507 U.S. 1023, 113 S.Ct. 1829, 123 L.Ed.2d 457 (1993).

Moreover, we believe that NSP's policy requiring inventory of the contents of a vehicle and any containers therein covers inventory of locked trunks. *See United States v. Wilson,* 938 F.2d 785, 789 (7th Cir.1991) (although written inventory policy did not "use buzz words 'closed containers'" court was "convinced that the term 'contents' provides sufficient elucidation"), *cert. denied,* 502 U.S. 1062, 112 S.Ct. 946, 117 L.Ed.2d 115 (1992). In addition, Schenck testified that the inventory search was conducted in accordance with department policy. *See United States v. Lowe,* 9 F.3d 43, 46 (8th Cir.1993) (testimony that search was conducted pursuant to department policy sufficient), *cert. denied,* 510 U.S. 1181, 114 S.Ct. 1229, 127 L.Ed.2d 573 (1994). We also note that "contrary to [Wallace's] argument, [an] inventory policy need not dictate when an officer may open a locked trunk." *United States v. Como,* 53 F.3d at 92.[6]

---

6. Wallace's reliance on *United States v. Wilson,* 636 F.2d 1161 (8th Cir.1980), is misplaced. In *Wilson,* this court held that "[a]bsent a special justification for a more extensive intrusion, the routine [inventory] search of a locked automobile trunk is unreasonable under the fourth amendment." *Id.* at 1165 (footnote omitted). In this case, there was a justification for searching the trunk as a safety precaution. *See United States v. Maier,* 691 F.2d 421, 425 (8th Cir.1982) (distin-

guishing *Wilson* because officer had need to search locked camper as part of caretaking function), *cert. denied,* 460 U.S. 1070, 103 S.Ct. 1524, 75 L.Ed.2d 947 (1983).

In addition, in *Wilson,* which was decided before *Bertine,* there was no evidence of an inventory policy and this court determined that the search of a locked trunk was unreasonable by "weigh[ing] the governmental interests advanced by an inventory search against the privacy inter-

Accordingly, the judgment of the district court is affirmed.

ests invaded in light of the particular circumstances of the case." 636 F.2d at 1163. However, in *Bertine*, the Supreme Court held that, as in this case, an inventory search conducted in good faith pursuant to an inventory policy is reasonable under the Fourth Amendment, without regard to a balancing of interests in a particular case. 479 U.S. at 374–75, 107 S.Ct. at 742–43.

The Court explained that "[a] single familiar standard is essential to guide police officers, who have only limited time and expertise to reflect on and balance the social and individual interests involved in the specific circumstances they confront." *Id.* at 375, 107 S.Ct. at 743 (internal quotation omitted).