2017 WY 114

**Christopher TAYBACK and Clare Phillips Tayback, Appellants (Petitioners),**

v.

**TETON COUNTY BOARD OF COUNTY COMMISSIONERS, Appellee (Respondent)**

and

**Four Shadows LLC, a Wyoming limited liability company, Appellee (Intervenor).**

S-17-0014

Supreme Court of Wyoming.

September 28, 2017

Representing Appellants: Mark D. Sullivan of Mark D. Sullivan, P.C., Wilson, Wyoming.

Representing Appellee Teton County Board of County Commissioners: Erin E. Weisman, Teton County Attorney's Office, Jackson, Wyoming.

Representing Appellee/Intervenor Four Shadows, LLC: Matthew E. Turner of Geittmann Larson Swift LLP, Jackson, Wyoming.

Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.

KAUTZ, Justice.

[¶1] Christopher and Clare Phillips Tayback challenge the Teton County Board of County Commissioners' (Board) decision granting Four Shadows, LLC a Basic Use Permit (BUP) to use its property in Teton Village for temporary construction storage/staging. The Taybacks claim the Board erred by granting the permit because Four Shadows' use was not temporary and the Board did not consider alternative sites.

[¶2] We affirm.

## ISSUES

[¶3] The Taybacks present the following issues on appeal:

1. Was the Board of County Commissioners' Order contrary to law and arbitrary and capricious where it permits a 16-year "temporary" use to continue, and where the Appellees each concede that the use is intended to continue until Teton Village is built out, an indeterminate period of time, estimated to last 10 to 25 more years?

2. Where the Board did not conduct or require any examination of alternative sites for the proposed use, and made no findings concerning alternatives available to Four Shadows, LLC, was its

Order unsupported by substantial evidence, arbitrary and capricious?

The Board adds another issue:

1. Do the [Taybacks] have standing to appeal the Board's *Findings of Fact, Conclusions of Law and Order Granting Approval of Basic Use Permit* BUP 2015-0065?

Four Shadows does not present a statement of the issues on appeal.

## FACTS

[¶4] Teton Village is located in the unincorporated area of Teton County, Wyoming. Four Shadows owns a 2.72 acre property in the village, which is referred to as the Granite Ridge site. Since 2001, Four Shadows has leased the site to contractors working on projects in Teton Village. The contractors use it for various construction storage and staging needs, including as a location for their construction trailers, equipment and material storage, and staging of construction activities. In 2010, the Taybacks purchased a residence that looks down upon the Granite Ridge site.

[¶5] Four Shadows had a permit for the Granite Ridge site that expired on October 1, 2015. Consequently, in September 2015, Four Shadows filed an application with Teton County for a four-year BUP for temporary use of the property as a construction storage/staging site. At the time Four Shadows applied for the permit, the site was leased to two contractors who were working on separate projects in Teton Village. Four Shadows' application stated that the need for construction storage/staging areas would continue until the planned construction of Teton Village was complete, which it estimated would take another twenty years.

[¶6] Although the Teton County Planning Director could have made the decision on Four Shadows' application, he decided to send the matter to the Board because there was some controversy over the Granite Ridge site. The Planning Department notified neighboring property owners, including the Taybacks, of Four Shadows' application. The notice invited them to submit written

comments to the Board and/or attend an upcoming public hearing.

[¶7] The Board held the public hearing in November 2015. The Planning Department staff submitted a report and gave a presentation at the hearing. They listed the "Key Issues" for the Board's consideration as: 1) "What are the best locations for construction staging areas in Teton Village that would have the least amount of impact" on residential development? 2) "Should these construction staging areas continue to be permitted as temporary uses when they are anticipated to be ongoing for twenty years?" 3) "Are there ways to mitigate the impacts to neighboring property owners when construction staging areas are located near residential areas?"

[¶8] The staff confirmed that Four Shadows' application complied with the county's land use regulations and recommended approval of the BUP, subject to seven conditions. One of the staff's recommendations was that the permit be tied to a particular project. Specifically, the staff recommended that the permit terminate when one of the projects that was then being staged at the site, the Caldera House, was complete.

[¶9] Four Shadows requested a four-year BUP which was not tied to any particular project. Four Shadows' representative explained that, because its site was used by different contractors for various projects, the overall impact of construction in Teton Village was reduced. Members of the public, including Ms. Tayback, were allowed to comment. The comments (written and verbal) expressed support for and opposition to the permit.

[¶10] At the conclusion of the public hearing, the Board voted unanimously to approve the permit with several conditions, including that the permit would expire in two years.[1] Prior to entering its written findings of fact, conclusions of law and order, the Board voted to reconsider. It held a second public hearing on January 5, 2016, with the discussion being focused mostly upon the proposed conditions to the permit. Shortly thereafter,

the Board issued its Findings of Fact, Conclusions of Law and Order approving Four Shadows' application for a BUP allowing temporary use of the Granite Ridge site for construction storage/staging of "any development project within Teton Village." The permit was limited to two years from the date of approval and required any request for renewal to be heard by the Board. The permit also included other conditions, including: 1) limiting outdoor use of the site to Monday through Saturday from 7 a.m. to 6:30 p.m.; and 2) only allowing certain activities on the site.

[¶11] The Taybacks filed a petition for review with the district court, claiming the Board's decision granting Four Shadows' permit was erroneous. The district court allowed Four Shadows to intervene in the proceeding. The Board claimed the Taybacks did not have standing to contest the permit. The district court ruled that the Taybacks had standing, but affirmed the Board's decision. The Taybacks filed a timely notice of appeal to this Court.

### STANDARD OF REVIEW

[¶12] The Board is an agency under the Wyoming Administrative Procedure Act. Wyo. Stat. Ann. § 16-3-101(b)(i) (LexisNexis 2017). We review an agency's decision as if it came directly to us, without giving any deference to the district court's decision. *Hardy v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div.*, 2017 WY 42, ¶ 10, 394 P.3d 454, 457 (Wyo. 2017). Wyo. Stat. Ann. § 16-3-114(c) (LexisNexis 2017) governs judicial review of agency actions:

> To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule

---

1. The Board also approved Four Shadows' application for a BUP allowing temporary construction storage/staging at another site—the Hay Meadows site. That permit is not at issue in this appeal.

of prejudicial error. The reviewing court shall:

> (i) Compel agency action unlawfully withheld or unreasonably delayed; and

> (ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

> (A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

> (B) Contrary to constitutional right, power, privilege or immunity;

> (C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

> (D) Without observance of procedure required by law; or

> (E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

[¶13] The Board held public hearings on Four Shadows' application. The proceedings were informal without the typical indicia of a true adversarial process. Unlike at a contested case hearing, witnesses were not sworn or subject to cross-examination and comments were taken from members of the audience. Given the informality of the proceedings, we review the Board's decision using § 16-3-114(c)(ii)(A), which directs the court to set aside an agency decision that is "[a]rbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." *Id. See also Wilson Advisory Committee v. Board of County Comm'rs*, 2012 WY 163, ¶ 20, 292 P.3d 855, 861 (Wyo. 2012).

> The arbitrary and capricious test requires the reviewing court to review the entire record to determine whether the agency reasonably could have made its finding and order based upon all the evidence before it. The arbitrary and capricious standard is more lenient and deferential to the agency than the substantial evidence standard because it requires only that there be a rational basis for the agency's decision.

*Gilbert [v. Bd. of County Comm'rs of Park County,* 2010 WY 68], ¶ 10, 232 P.3d 17[,]24 [ (Wyo. 2010) ] (quoting *Dale [v.*

*S&S Builders,* 2008 WY 84], ¶ 12, 188 P.3d [554,] 559 [ (Wyo. 2008) ] ).

*Wilson Advisory Committee,* ¶ 21, 292 P.3d at 861.

[¶14] As always, we review an agency's conclusions of law *de novo* and affirm only when they are in accordance with the law. *Id.,* ¶ 22, 292 P.3d at 862. *See also Wyodak Res. Dev. Corp. v. Wyo. Dep't of Rev.,* 2017 WY 6, ¶ 15, 387 P.3d 725, 730 (Wyo. 2017); *Dale,* ¶ 26, 188 P.3d at 561-62.

## DISCUSSION

### 1. Standing

[¶15] The Board claims the Taybacks do not have standing to contest its order granting Four Shadows' permit. We will begin with this issue because standing is jurisdictional. *Sinclair Oil Corp. v. Wyo. Public Service Comm'n,* 2003 WY 22, ¶ 11, 63 P.3d 887, 894 (Wyo. 2003). A challenge to a party's standing presents a question of law subject to *de novo* review. *Halliburton Energy Servs. v. Gunter,* 2007 WY 151, ¶ 10, 167 P.3d 645, 649 (Wyo. 2007).

[¶16] Section 16-3-114(a) allows "any person aggrieved or adversely affected in fact" by a final agency decision to petition for judicial review. *See also* W.R.A.P. 12.01. This Court has explained generally how to identify an aggrieved or adversely affected person:

> An aggrieved or adversely affected person is one who has a legally recognizable interest in that which will be affected by the action. *Hoke v. Moyer,* 865 P.2d 624, 628 (Wyo.1993). A potential litigant must show injury or potential injury by "alleg[ing] a perceptible, rather than a speculative, harm resulting from the agency action." *Foster's, Inc. v. City of Laramie,* 718 P.2d 868, 872 (Wyo.1986). "The interest which will sustain a right to appeal must generally be substantial, immediate, and pecuniary. A future, contingent, or merely speculative interest is ordinarily not sufficient." *L Slash X Cattle Company, Inc. v. Texaco, Inc.,* 623 P.2d 764, 769 (Wyo. 1981) (quoting 4 Am.Jur.2d *Appeal & Error* § 180).

*Roe v. Board of County Comm'rs, Campbell County,* 997 P.2d 1021, 1023 (Wyo. 2000).

[¶17] We have addressed, more specifically, the standing requirements for appeals of zoning and land use matters:

> [A]n aggrieved or adversely affected person having standing to sue is a person who has a legally recognizable interest that is or will be affected by the action of the zoning authority in question. An individual having standing must have a definite interest exceeding the general interest in community good shared in common with all citizens.

*Hoke*, 865 P.2d at 628 (quoting E.C. Yokley, 4 *Zoning Law and Practice* § 24–3 at 194 (4th ed. 1979) (footnote omitted)).

*Northfork Citizens for Responsible Dev. v. Park County Board of County Comm'rs*, 2008 WY 88, ¶ 9, 189 P.3d 260, 262-63 (Wyo. 2008).

[¶18] The Taybacks own a residence on property overlooking the Granite Ridge site. Their property is not directly adjacent to the site. However, we said in *Northern Laramie Range Foundation v. Converse County Bd. of County Comm'rs*, 2012 WY 158, ¶ 33, 290 P.3d 1063, 1075 (Wyo. 2012) that, provided a person claims an interest that exceeds the general public's, ownership of property "near" the subject of the challenged agency action is sufficient to establish standing. *Id.*, citing *Northfork* and *Hoke, supra.*

[¶19] The Taybacks assert that Four Shadows' operation harms their interests because the views from their residence are spoiled by the site. They provided photographic proof to the Board that the staging site is in their viewshed. In *Northfork*, ¶ 16, 189 P.3d at 264-65, we recognized that interference with scenic views is a valid harm to establish standing. *See also Northern Laramie Range*, ¶ 27, 290 P.3d at 1074. In addition, the Taybacks told the Board that the dust and noise emanating from the staging site six days per week, nearly twelve hours per day, interfere with their ability to enjoy their property. This asserted harm clearly is not speculative as the staging site has been in actual operation and the Taybacks claim to have experienced the adverse effects. Therefore, the Taybacks have an interest that is greater than the general public's, giving them standing to maintain their appeal as persons aggrieved and adversely affected in fact by the Board's decision to issue the permit.

### 2. *Regulatory Scheme/Procedure*

[¶20] To provide the proper legal context for our discussion of the issues in this case, we begin with a brief overview of the applicable portions of the statutory and regulatory authority governing land use in the relevant area of Teton Village and how the laws were applied in this case. Pursuant to Wyo. Stat. Ann. § 18-5-201 (LexisNexis 2017), boards of county commissioners have broad authority to promulgate zoning regulations.

> To promote the public health, safety, morals and general welfare of the county, each board of county commissioners may regulate and restrict the location and use of buildings and structures and the use, condition of use or occupancy of lands for residence, recreation, agriculture, industry, commerce, public use and other purposes in the unincorporated area of the county.

*Id.; See also Wilson Advisory Committee*, ¶ 26, 292 P.3d at 862; *Snake River Venture v. Bd. of County Comm'rs, Teton County*, 616 P.2d 744, 752 (Wyo. 1980).

[¶21] The Board has promulgated two types of regulations that govern this dispute. The overall zoning requirements are found in the Teton Village Expansion Resort Master Plan, Planned Unit Development (Master Plan) (2013). The permitting process is governed by the Teton County Land Development Regulations (LDRs).

[¶22] Four Shadows applied for a BUP allowing temporary use of the Granite Ridge site for construction storage/staging. Master Plan § XII, the Area Use Schedule, lists construction storage/staging as an allowed temporary use within the Planned Unit Development. The Master Plan does not identify specific areas where construction storage/staging is allowed but leaves it up to the landowner to request a permit for its chosen site. Prior to amendment of the LDRs in January 2015, temporary uses were permitted with temporary use permits. Four Shadows' permit, which expired on October 1, 2015, was a temporary use permit. However,

under the 2015 regulations, temporary uses are permitted through BUPs.

[¶23] The requirements for approval of a BUP are found in LDR 8.4.1.C:

**Findings for Approval**

A basic use permit shall be approved upon finding the application:

1. Complies with the use specific standards of Div. 6.1 and the zone;

2. Complies with all other relevant standards of these LDRs and all other County Resolutions; and

3. Is in substantial conformance with all standards or conditions of any prior applicable permits or approvals.

Use of the site for construction staging/storage meets zoning requirements because it is allowed as a temporary use in the Master Plan § XII, Area Use Schedule. LDR 6.1.12 sets out the "use specific standards" for temporary uses. It defines "temporary use" as "a use established for a fixed period of time." LDR 6.1.12.A.1.

[¶24] The decision of whether to approve or deny an application for a BUP typically falls to the relevant county official. Here, it would be the Planning Director. LDR 8.2.9. However, "[i]f an application that would generally be subject to a decision by a County official will have significant local and community impacts that warrant public review, the County official may require the application be reviewed by the appropriate advisory bodies and decided upon by the appropriate decision-making body." LDR 8.2.9.C. Utilizing that option, the Planning Director elected to have Four Shadows' application decided by the Board at a public hearing. LDR 8.2.14 delineates the notice and other procedural requirements for public hearings, and the Taybacks make no claim the procedural requirements were not met.

*3. Temporary Use*

[¶25] The Taybacks claim that, when the Board granted Four Shadows a BUP for construction storage/staging, it misinterpreted the regulations and improperly determined that Four Shadows' use was temporary. An agency's rules and regulations " 'have the force and effect of law, and an administrative agency must follow its own rules and regulations or face reversal of its action.' " *Wilson Advisory Committee*, ¶ 22, 292 P.3d at 862, quoting *Northfork Citizens for Responsible Dev. v. Bd. of County Comm'rs of Park County (Northfork II)*, 2010 WY 41, ¶ 27, 228 P.3d 838, 848 (Wyo. 2010) (other citation omitted). We interpret administrative regulations as a matter of law using our well-known rules of statutory construction. *See State ex rel. Wyo. Dep't of Rev. v. Union Pacific R. Co.*, 2003 WY 54, ¶ 12, 67 P.3d 1176, 1183 (Wyo. 2003). If we determine that the language is clear and unambiguous, we give effect to its plain meaning. *Powder River Coal Co. v. Wyo. State Bd. of Equalization*, 2002 WY 5, ¶ 6, 38 P.3d 423, 426 (Wyo. 2002). In general, "we defer to an agency's interpretation of its own rules and regulations unless that interpretation is clearly erroneous or inconsistent with the plain language of the rules." *Powder River Basin Res. Council v. Wyo. Dep't of Envtl. Quality*, 2010 WY 25, ¶ 6, 226 P.3d 809, 813 (Wyo. 2010).

[¶26] "Temporary use" is defined as "a use established for a fixed period of time." LDR 6.1.12.A.1. The Taybacks do not contend that the definition of temporary use is ambiguous. However, they say that Four Shadows' long history of using the Granite Ridge site for construction storage/staging and its statement that it may need to continue to use the site until construction under the Master Plan is complete, which is estimated at twenty more years, demonstrate the use is not temporary. They direct us to cases from other jurisdictions defining "temporary use" and to dictionary definitions of "temporary," such as one from Black's Law Dictionary (7th ed. 1999), which states: "lasting for a time only; existing or continuing for a limited (usu. short) time; transitory." It is unnecessary for us to look outside the LDRs for a definition of "temporary use" because the term is specifically defined in LDR 6.1.12.A.1. When a statute or regulation specifically defines a term, we follow that definition. *See Burgess v. U.S.*, 553 U.S. 124, 130, 128 S.Ct. 1572, 1577, 170 L.Ed.2d 478 (2008).

[¶27] The definition of "temporary use" as "a use established for a fixed period of time"

is not ambiguous. The meaning of "established" in this context is to recognize or confirm. *See* Black's Law Dictionary (10th ed. 2014). The pertinent meaning of "fixed" is "not fluctuating or varying; definite." Webster's Third New Int'l Dictionary, 861 (2012). Using the plain meaning of the terms, use is temporary if it is recognized or confirmed for a definite amount of time. A valid permit "establishes" (recognizes or confirms) the use. The BUP established Four Shadows' right to use the site for the fixed (definite) period of two years.

[¶28] The Taybacks claim, however, that the Board's decision saddles them with "two decades or more of this continuing nuisance" and the Board approved "an ongoing use with no foreseeable end." The Taybacks' argument focusing on the history of the site and the projected time it will take to complete the construction envisioned by the Master Plan entirely disregards the applicable definition of "temporary use" and the Board's actual decision. The Board granted Four Shadows a two-year permit to use the Granite Ridge site for construction storage/staging, nothing more. When the permit expires, Four Shadows' right to use the site will no longer be established. The fact that Four Shadows may, or is even likely to, apply for a new permit when the current one expires is irrelevant to whether the Board properly granted this BUP for temporary use.[2] The regulations do not restrict the number of times temporary use for construction storage/staging may be permitted at a given site, and we do not insert language that the Board chose to leave out of the regulation.[3] *See Meyer v. Fanning*, 2016 WY 6, ¶ 40, 367 P.3d 629, 641 (Wyo. 2016) (applying rule against inserting language into a statute).

[¶29] The Taybacks assert that the Teton County planning staff and individual commissioners opined that, because the site has existed since 2001 and construction under the Master Plan is estimated to last another twenty years, the use of the site is not actually temporary in nature. Various participants in the application process made comments suggesting the long-term use of the site and construction plans for Teton Village raised the issue of whether Four Shadows' use of the site for construction storage/staging was truly temporary, at least as they personally defined the term "temporary." Their opinions, however, were based on an incorrect assumption that "temporary" must mean something less than sixteen years (past) or twenty years (future). In the end, the Board recognized the two-year permit limited the use to a definite period of time under the regulations and, therefore, met the LDRs' definition of "temporary use." The Board's decision was correct. While the need to use the property as a construction staging site will likely continue upon expiration of the permit, Four Shadows' right to use the property for that purpose is currently limited by the two-year permit.

[¶30] The Board's ultimate decision reinforced the temporary nature of the permitted use. The two-year BUP was half the time Four Shadows had requested. The Board also conditioned the permit by requiring Four Shadows to appear before the Board if it sought a new permit when the current one expired. This requirement means that if Four Shadows files an application to continue its use of the site for construction storage/staging when the current permit is set to expire, it cannot be handled administratively by the Planning Director. It must be decided by the Board under the elevated process used in

**2.** LDR 8.4.1.C uses mandatory language. It states that a BUP **shall** be issued if an applicant meets the three conditions listed in the LDR.

**3.** The LDRs specifically limit the number of times a permittee can request an extension or renewal of certain types of temporary uses. LDR 6.1.12. For example, a temporary shelter may be permitted for "a period not to exceed one year. An extension may be granted by the Planning Director for a period not to exceed [two] additional years for good cause." LDR 6.1.12.D. There was some discussion at oral argument as

to whether a permittee, who had reached the end of the extensions of one permit, could apply for a different permit for the same temporary use. We do not need to address that issue because the LDRs do not include a provision limiting extensions for temporary construction storage/staging permits. In fact, the LDRs do not have any specific provisions regarding construction storage/staging as a temporary use. As we stated earlier, it is the Master Plan that recognizes construction storage/staging in Teton Village as a temporary use.

this case. The only certainty is that Four Shadows now has a recognized right to use the site for two years. LDR 8.4.1.C (or the regulation in effect at the time of application) will control whether any new permit is issued, if Four Shadows applies for one. We, therefore, conclude that the Board's interpretation of "temporary use" in its regulations was not contrary to the law.

### 4. Consideration of Alternative Sites

[¶31] The Taybacks assert the Board acted arbitrarily and capriciously by failing to consider alternative sites for Four Shadows' construction storage/staging operation. In support of their argument, the Taybacks point out that the planning staff broached the possibility of moving the site farther away from residential areas. The discussion at the public hearing also addressed potential alternative sites. In the end, the staff recommended approval of a permit allowing Four Shadows to operate at the Granite Ridge site, and the Board did not address alternative sites when it issued its findings of fact, conclusions of law and order.

[¶32] Even in informal proceedings, agencies may be required to consider, and make factual findings about, an issue if the applicable regulations mandate it. *Wilson Advisory Committee*, ¶ 41, 292 P.3d at 866. In *Wilson*, we held that the Teton County Board of County Commissioners was required to make factual findings about a proposed project's impacts on scenic views and the environment because, under the regulations, those conditions had to be met for approval of a project. *Id.*, ¶ 56, 292 P.3d at 869-70.

[¶33] The Master Plan does not identify specific areas for construction storage/staging sites in Teton Village; instead, the landowner requests a permit for its chosen site. The Taybacks do not direct us to any provision in the LDRs or Master Plan that requires the Board to consider, or make findings about, alternative sites for construction storage/staging. Without some authority requiring the Board to consider alternative sites, we cannot say that the Board acted contrary to law or arbitrarily and capriciously by failing to do so.

## CONCLUSION

[¶34] The Board's decision to grant Four Shadows a BUP for temporary use of the Granite Ridge site for construction storage/staging was not arbitrary, capricious, an abuse of discretion, or otherwise contrary to the law.

[¶35] Affirmed.