# IN THE SUPREME COURT, STATE OF WYOMING

## 2023 WY 39

**APRIL TERM, A.D. 2023**

**April 27, 2023**

KEITH ALLEN BECKWITH,

Appellant
(Defendant),

v.

S-22-0227

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Laramie County*
*The Honorable Catherine R. Rogers, Judge*

*Representing Appellant:*
> *Office of the State Public Defender: Diane Lozano, Wyoming State Public Defender; Kirk A. Morgan, Chief Appellate Counsel.*

*Representing Appellee:*
> *Bridget Hill, Attorney General; Jenny L. Craig, Deputy Attorney General; Kristen R. Jones, Senior Assistant Attorney General; and Donovan Burton, Assistant Attorney General.*

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY, and FENN, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX, Chief Justice.**

[¶1]    Keith Allen Beckwith entered a conditional plea of guilty to felony possession of methamphetamine. On appeal, he claims the district court erred in denying his motion to suppress evidence obtained after law enforcement forced open a locked box during an inventory search of his vehicle. We affirm.

## ISSUE

[¶2]    This appeal presents a single issue:

> Did the district court err when it denied Mr. Beckwith's motion to suppress based on its conclusion that the state trooper who forced opened the locked box during an inventory search of Mr. Beckwith's vehicle acted in accordance with the Wyoming Highway Patrol's inventory policy?

## FACTS

[¶3]    On September 25, 2021, Wyoming Highway Trooper Caleb Pushcar was patrolling I-25 near Cheyenne when he stopped a vehicle with a nonfunctional headlamp. Mr. Beckwith was driving and had one passenger who identified himself as Leroy Valdez. While Trooper Pushcar was confirming the identities of the vehicle's occupants and running a check on them, Trooper Joshua Gebauer arrived to assist. Dispatch advised that both men had outstanding arrest warrants, and both were arrested and placed in separate patrol vehicles.

[¶4]    Because both occupants of the vehicle were arrested, and no other drivers were available, the troopers impounded the vehicle. Pursuant to Wyoming Highway Patrol (WHP) Policy and Procedure No. 09-24, troopers are authorized to conduct a vehicle inventory without a warrant or probable cause when a "vehicle has been lawfully seized or impounded pursuant to the arrest of the driver[.]" The policy defines the scope of the inventory as follows:

> The vehicle inventory may extend to all areas of the vehicle in which personal property or hazardous materials may reasonably be found, including but not limited to the passenger compartment, trunk, and glove compartment. The vehicle inventory will also include the inspection of closed and sealed packages or containers.

1

[¶5]    In accordance with this policy, Troopers Gebauer and Pushcar performed their inventory search of the vehicle. Trooper Gebauer began the inventory in the driver's area. In the center console he observed "a bunch" of small clear plastic bags, one of which contained remnants of a crystalline substance. Trooper Pushcar then found "a little metallic lockbox" on the floorboard toward the back of the driver's seat and handed it to Trooper Gebauer. Because the box was locked, Trooper Gebauer used "a small hammer" and "a mini pry bar" to pop it open. Inside the box, they found several clear baggies with suspected methamphetamine and heroin, cash, a meth pipe, and a small scale. The suspected methamphetamine weighed 29.5 grams, and the suspected heroin weighed 0.6 grams.

[¶6]    The State charged Mr. Beckwith with felony possession of methamphetamine and misdemeanor possession of heroin. Mr. Beckwith filed a motion to suppress the evidence obtained from the locked box. He contended that opening the box exceeded the scope of a permissible inventory search under the WHP policy and therefore violated his Fourth Amendment rights. The district court denied his motion, reasoning as follows:

> Defendant attached the Wyoming Highway Patrol Policy and Procedure 3.3, relating to inventory searches, to his *Motion*, noting that it provides that "officers may inspect closed and sealed packages or containers." Defendant argues that the term "closed" does not include locked containers. The court disagrees. A plain language reading of the word "closed" does not differentiate between locked and unlocked containers. "Closed" simply means that a container is not open. This accurately describes both a locked and an unlocked closed container. Trooper Gebauer, an experienced trooper who testified that he has conducted a large number of inventory searches, testified that the inventory policy does not make an exception for locked containers. Without such differentiation in the policy, the term "closed" by its plain language refers to all containers that are not open, whether locked or unlocked.

[¶7]    Pursuant to a plea agreement, Mr. Beckwith entered a conditional guilty plea to felony possession of methamphetamine. The district court accepted his plea, entered judgment, and sentenced him to a prison term of eighteen to thirty-six months. Mr. Beckwith timely appealed.

2

[¶8]    Mr. Beckwith challenges the district court's denial of his motion to suppress under the Fourth Amendment.

> In reviewing a denial of a motion to suppress evidence, we adopt the district court's factual findings unless those findings are clearly erroneous. *Rodriguez v. State*, 2018 WY 134, ¶ 15, 430 P.3d 766, 770 (Wyo. 2018) (citing *Jennings v. State*, 2016 WY 69, ¶ 8, 375 P.3d 788, 790 (Wyo. 2016)). We view the evidence in the light most favorable to the district court's decision because the court conducted the hearing and had the opportunity to "assess the witnesses' credibility, weigh the evidence and make the necessary inferences, deductions and conclusions." *Kunselman v. State*, 2008 WY 85, ¶ 9, 188 P.3d 567, 569 (Wyo. 2008) (quoting *Hembree v. State*, 2006 WY 127 ¶ 7, 143 P.3d 905, 907 (Wyo. 2006)). "On those issues where the district court has not made specific findings of fact, this Court will uphold the general ruling of the court below if supported by any reasonable view of the evidence." *Feeney v. State*, 2009 WY 67, ¶ 9, 208 P.3d 50, 53 (Wyo. 2009) (citing *Neilson v. State*, 599 P.2d 1326, 1330 (Wyo. 1979)).

*Hawken v. State*, 2022 WY 77, ¶ 12, 511 P.3d 176, 180-81 (Wyo. 2022) (quoting *Pryce v. State*, 2020 WY 151, ¶ 16, 477 P.3d 90, 94-95 (Wyo. 2020)). "However, the underlying question of whether the search and seizure was constitutional is a question of law, which we review de novo." *Id.* (citing *Fuller v. State*, 2021 WY 36, ¶ 8, 481 P.3d 1131, 1133 (Wyo. 2021)).

*DISCUSSION*

[¶9]    "The Fourth Amendment to the United States Constitution prohibits 'unreasonable searches and seizures.'" *Barney v. State*, 2022 WY 49, ¶ 27, 507 P.3d 459, 464 (Wyo. 2022) (quoting U.S. Const. amend. IV). "Under the Fourth Amendment, warrantless searches and seizures are unreasonable absent a recognized exception to the warrant requirement." *Phippen v. State*, 2013 WY 30, ¶ 13, 297 P.3d 104, 108 (Wyo. 2013) (citing *Tucker v. State*, 2009 WY 107, ¶ 22, 214 P.3d 236, 243 (Wyo. 2009)). Vehicle inventories are a recognized exception. *Hunnicutt-Carter v. State*, 2013 WY 103, ¶ 16, 308 P.3d 847, 851 (Wyo. 2013) (citing *Johnson v. State*, 2006 WY 79, ¶ 13, 137 P.3d 903, 906 (Wyo. 2006)).

[¶10] "The inventory exception allows police officers to inventory the contents of a vehicle in the possession of law enforcement if the inventory 'is conducted pursuant to a

standardized police procedure.'" *Id.* (quoting *Vargas-Rocha v. State*, 891 P.2d 763, 767 (Wyo. 1995)). "Probable cause is unnecessary to conduct an inventory, but the inventory cannot be a bad faith pretext for general investigatory rummaging." *Id.* at ¶ 17, 308 P.3d at 851-52 (citing *Johnson*, 2006 WY 79, ¶ 13, 137 P.3d at 906). Rather than being investigative, a vehicle inventory serves three administrative purposes:

> [I]t protects the vehicle itself from theft or vandalism, it protects the police and the towing company from danger, and it protects the police and towing company from claims or disputes over property claimed to have been lost or stolen after law enforcement took control of the vehicle.

*Id.* (citing *Johnson*, 2006 WY 79, ¶ 14, 137 P.3d at 906); *see also Colorado v. Bertine*, 479 U.S. 367, 371, 107 S.Ct. 738, 741, 93 L.Ed.2d 739 (1987) (noting inventory searches are administrative rather than investigative); *United States v. Tueller*, 349 F.3d 1239, 1243 (10th Cir. 2003) (inventory search not considered investigative where it serves administrative purpose).

[¶11]  "Consonant with the Fourth Amendment, the opening of closed containers during an inventory search is permissible if conducted in good faith, pursuant to a standardized police policy, and as long as the search is not a ruse for general rummaging for evidence of a crime." *Johnson*, 2006 WY 79, ¶ 24, 137 P.3d at 908-09 (citing *Bertine*, 479 U.S. at 374, 107 S.Ct. at 742). Mr. Beckwith does not claim Troopers Gebauer and Pushcar acted in bad faith or that their inventory search was a ruse for general rummaging for evidence of a crime. He claims only that the WHP inventory policy did not authorize the troopers to open locked containers, and the opening of the locked box therefore ran afoul of the Fourth Amendment.

[¶12]  Mr. Beckwith's argument requires that we interpret the WHP inventory policy, which we do using our usual rules of statutory interpretation. *Tayback v. Teton Cnty. Bd. of Cnty. Comm'rs*, 2017 WY 114, ¶ 25, 402 P.3d 984, 990 (Wyo. 2017) ("We interpret administrative regulations as a matter of law using our well-known rules of statutory construction."); *see also Bd. of Trs. of Lincoln Cnty. Sch. Dist. No. Two v. Earling*, 2022 WY 23, ¶ 31, 503 P.3d 629, 638 (Wyo. 2022) (looking to face of policies and procedures to determine whether they provided a clear standard of conduct). If we determine that the language is clear and unambiguous, we give effect to its plain meaning. *Tayback*, 2017 WY 114, ¶ 25, 402 P.3d at 990 (citing *Powder River Coal Co. v. Wyo. State Bd. of Equalization*, 2002 WY 5, ¶ 6, 38 P.3d 423, 426 (Wyo. 2002)).

[¶13]  The WHP inventory policy specifies that "[t]he vehicle inventory will also include the inspection of closed and sealed packages or containers." A "closed" container is one that is "not open." *Closed*, *Merriam-Webster* https://www.merriam-webster.com/dictionary/closed, (last visited Apr. 3, 2023). A "sealed" container is one

4

with "a closure that must be broken to be opened[.]" *Seal*, *Merriam-Webster* https://www.merriam-webster.com/dictionary/seal, (last visited Apr. 3, 2023). These terms are broad enough to include locked containers without the policy using that precise language. *See, e.g.*, *United States v. Morris*, 915 F.3d 552, 556-57 (8th Cir. 2019) (policy requiring inventory of entire vehicle broad enough to include opening of containers); *United States v. Matthews*, 591 F.3d 230, 237 (4th Cir. 2009) (policy requiring "complete inventory" sufficient to include closed containers); *United States v. Wallace*, 102 F.3d 346, 349 (8th Cir. 1996) (policy requiring inventory of contents of vehicle and any containers therein broad enough to encompass locked trunks); *United States v. Wilson*, 938 F.2d 785, 789 (7th Cir. 1991) (policy that required inventory of vehicle's "contents" but did not "use the buzz words 'closed container'" broad enough to allow search of closed containers).

[¶14]   Additionally, nothing in the WHP policy suggests it intended to limit the inventory to unlocked containers. The word "unlocked" was not used to modify the phrase "closed and sealed packages or containers." In contrast, in providing for the inventory of abandoned vehicles, the policy distinguishes between those found locked and those found unlocked.[1] This illustrates that the WHP knew how to distinguish between locked and unlocked spaces, and had it intended to limit the search of containers to those that were unlocked, it would have done so. *See Matter of U.S. Currency Totaling $14,245.00*, 2022 WY 15, ¶ 16, 503 P.3d 51, 56 (Wyo. 2022) ("When the legislature specifically uses a word in one place, we will not interpret that word into other places where it was not used.") (quoting *Wyo. State Hosp. v. Romine*, 2021 WY 47, ¶ 29, 483 P.3d 840, 848 (Wyo. 2021)).

[¶15]   This interpretation is also consistent with the policy's stated purpose "to protect motor vehicles and their contents while in police or tow operator's custody; to protect the agency against claims of lost, stolen or damaged property; and to protect agency Members and the public against injury or damaged property due to hazardous materials or substances that may be in the vehicle." As we have previously recognized, "[a]n inventory search that does not include all of the property within an impounded vehicle undermines the purposes for the inventory." *Johnson*, 2006 WY 79, ¶ 25, 137 P.3d at

---

[1] Section 4 of the WHP inventory policy provides:

> 4.1   Members are not required to inventory a locked Abandoned Motor Vehicle (AMV) utilizing a Vehicle Inventory Receipt (P-22). Instead, a Member must inventory items the Member can see from outside of the locked vehicle on the Abandoned Motor Vehicle (MVAV-203) form under the "Contents" section.

> 4.2   An unlocked AMV will be inventoried and noted on the AMV (MVAV-203) form under the "Contents" section.

909; *see also Bertine*, 479 U.S. at 373, 107 S.Ct. at 742 ("Knowledge of the precise nature of the property helped guard against claims of theft, vandalism, or negligence. Such knowledge also helped to avert any danger to police or others that may have been posed by the property.") (footnote omitted); *Matthews*, 591 F.3d at 237-38 ("Only by performing a full inventory of the car-which includes opening closed containers-could an officer identify all the vehicle's valuables and effectively secure them.").

[¶16] Finally, we reject Mr. Beckwith's argument that interpreting WHP's policy to allow troopers to open locked containers is nonsensical because it allows them to destroy the property the inventory is intended to protect. "'Excessive or unnecessary destruction of property' can render police conduct unreasonable under the Fourth Amendment." *Tueller*, 349 F.3d at 1245 (quoting *United States v. Ramirez*, 523 U.S. 65, 71, 118 S.Ct. 992, 996, 140 L.Ed.2d 191 (1998)). The record contains no evidence, however, that Trooper Gebauer destroyed or even damaged the locked box when he pried it open, and Mr. Beckwith directs us to no such evidence.

[¶17] Affirmed.