# THE SUPREME COURT, STATE OF WYOMING

# 2025 WY 40

APRIL TERM, A.D. 2025

April 8, 2025

BRANDON CHRISTOPHER SERINI,

Appellant
(Defendant),

v.

S-24-0230

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Laramie County*
*The Honorable Robin S. Cooley, Judge*

*Representing Appellant:*

Office of the State Public Defender: Brandon T. Booth, State Public Defender; Kirk A. Morgan, Chief Appellate Counsel; Robin S. Cooper, Senior Assistant Appellate Counsel.

*Representing Appellee:*

Bridget Hill, Attorney General; Jenny L. Craig, Deputy Attorney General; Kristen R. Jones, Senior Assistant Attorney General; Donovan Burton, Assistant Attorney General.

*Before FOX, C.J., and BOOMGAARDEN, GRAY, FENN, and JAROSH, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FENN, Justice.**

[¶1]   Brandon Serini entered a conditional guilty plea to felony possession of methamphetamine.  On appeal, he claims the district court erred in denying his motion to suppress evidence found after law enforcement seized his backpack and performed an inventory search of it following his arrest.  We affirm.

## ISSUE

[¶2]   Mr. Serini presents a single issue, which we rephrase as follows: Did the district court err when it denied Mr. Serini's motion to suppress evidence against him based on its finding the officers acted in good faith when they seized and reasonably conducted an inventory search of his backpack?

## FACTS

[¶3]   On October 5, 2023, Officer Nathaniel Lucero with the Cheyenne Police Department was out on patrol in Cheyenne, Wyoming.  Officer Lucero saw Mr. Serini sitting alone in front of Hambones Pizza next to a bicycle with a backpack wrapped around the seat.  Officer Lucero recognized Mr. Serini, so he typed his name into the police department's computer system and found Mr. Serini had an outstanding warrant for his arrest.  Officer Lucero contacted Mr. Serini.  Mr. Serini stated he was waiting for a pizza, and he was supposed to take the pizza to his girlfriend.

[¶4]   Officer Lucero checked with dispatch to confirm Mr. Serini had an active warrant out for his arrest.  Dispatch confirmed there was an active warrant for Mr. Serini's arrest on a misdemeanor failure to appear.  Mr. Serini told Officer Lucero he was living beneath an underpass with his girlfriend and indicated his girlfriend was currently at the underpass.  Officer Lucero told Mr. Serini he would let Mr. Serini call her to pick up his belongings.  However, Mr. Serini responded that he did not know his girlfriend's phone number.  Another officer, Sergeant Rippy, again stated law enforcement would call Mr. Serini's girlfriend to come retrieve his belongings, but Mr. Serini said he did not know her phone number.   While allowing Mr. Serini to eat his pizza, but before handcuffing and transporting him, Officer Lucero had the following exchange with Mr. Serini:

> [Officer Lucero]: You got somebody that can pick up your bike?
>
> [Mr. Serini]: I'm not sure. I don't know what to do.
>
> [Officer Lucero]: Ok, we can log your backpack. I've just never logged a bike before.

1

Officer Lucero proceeded to have a conversation with another officer at the scene about transporting Mr. Serini's bike, but the officers indicated they had no ability to transport the bike. Mr. Serini interjected in this conversation and stated, "I don't know anybody else's number to do so, and that sucks."

[¶5]  After Mr. Serini finished eating one slice of pizza, officers placed him in handcuffs, and Officer Lucero walked Mr. Serini over to his patrol vehicle. Officer Lucero searched Mr. Serini's pockets. Officer Audrey McGraw retrieved the backpack off the seat of Mr. Serini's bike and placed the backpack into her patrol vehicle. She took the backpack to her vehicle to "drive it to the police department and log it in for safekeeping." After placing the backpack into her patrol vehicle, Officer McGraw walked over to Officer Lucero and retrieved the items he had found in Mr. Serini's pockets. Officer McGraw told Officer Lucero she would log the items found in Mr. Serini's pockets "with his backpack."

[¶6]  Officer Lucero transported Mr. Serini to the jail and booked him in. Officer McGraw drove to the Cheyenne Police Department to log Mr. Serini's backpack for safekeeping. Upon her arrival at the police department, Officer McGraw began to inventory the contents of Mr. Serini's backpack. When she opened the front pouch of the backpack, she found a clear bag with a substance inside that she recognized "to be consistent with being possibly methamphetamine." Officer McGraw called Sergent Rippy, who was more experienced at handling drugs. Sergeant Rippy weighed the bag and determined it weighed approximately 23.94 grams. Officer McGraw finished inventorying the rest of the contents of the backpack and labeled and packaged the items to be secured.

[¶7]  The State charged Mr. Serini with felony possession of methamphetamine. Mr. Serini filed a motion to suppress "all evidence obtained as a result of law enforcement's search of his grey backpack." He contended the search of his backpack was per-se unreasonable because it was not justified by any of the exceptions to the warrant requirement. The district court held a hearing on January 17, 2024. The district court denied the motion and found law enforcement's "seizure of [Mr. Serini's] backpack from the scene of his arrest was an acceptable act under their community caretaker functions, as it was pursuant to a policy and done in good faith." It further found the search of Mr. Serini's backpack after his arrest was a permissible inventory search consistent with the Cheyenne Police Department's standardized policy.

[¶8]  Pursuant to a plea agreement, Mr. Serini entered a conditional guilty plea to felony possession of methamphetamine. Mr. Serini reserved his right to seek review of the district court's denial of his motion to suppress. Following sentencing, Mr. Serini timely appealed.

## STANDARD OF REVIEW

[¶9]  Mr. Serini challenges the district court's denial of his motion to suppress under the

Fourth Amendment to the United States Constitution.[1]  Our overall review of whether a search or seizure was constitutional is a question of law, which we review de novo. *Beckwith v. State*, 2023 WY 39, ¶ 8, 527 P.3d 1270, 1272 (Wyo. 2023); *United States v. Braxton*, 61 F.4th 830, 833 (10th Cir. 2023).

> In reviewing a denial of a motion to suppress evidence, we adopt the district court's factual findings unless those findings are clearly erroneous.  We view the evidence in the light most favorable to the district court's decision because the court conducted the hearing and had the opportunity to assess the witnesses' credibility, weigh the evidence and make the necessary inferences, deductions and conclusions.  On those issues where the district court has not made specific findings of fact, this Court will uphold the general ruling of the court below if supported by any reasonable view of the evidence.

*Beckwith*, ¶ 8, 527 P.3d at 1272 (quoting *Hawken v. State*, 2022 WY 77, ¶ 12, 511 P.3d 176, 180–81 (Wyo. 2022)) (internal citations and quotation marks omitted).

## **DISCUSSION**

[¶10]  The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. . . ." U.S. Const. amend. IV.  In general, "[w]arrantless searches and seizures are per se unreasonable[,]" unless justified by an established exception. *Alexander v. State*, 2023 WY 127, ¶ 13, 540 P.3d 232, 236 (Wyo. 2023); *Vassar v. State*, 2004 WY 125, ¶ 13, 99 P.3d 987, 993 (Wyo. 2004).  "[I]nventory searches are . . . a well-defined exception to the warrant requirement of the Fourth Amendment." *Colorado v. Bertine*, 479 U.S. 367, 371, 107 S. Ct. 738, 741, 93 L. Ed. 2d 739 (1987).  "Probable cause is unnecessary to conduct an inventory [search]." *Beckwith*, 2023 WY 39, ¶ 10, 527 P.3d at 1273; *see also Whren v. United States*, 517 U.S. 806, 811, 116 S. Ct. 1769, 1773, 135 L. Ed. 2d 89 (1996).  "An inventory search is the search of property lawfully seized and detained, in order to ensure that [the property] is harmless, to secure valuable items (such as might be kept in a towed car), and to protect against false claims of loss or damage." *Whren*, 517 U.S. at 811 n.1, 116 S. Ct. at 1773 n.1 (citing *South Dakota v. Opperman*, 428 U.S. 364, 369, 96 S. Ct.

---

[1] Although Mr. Serini's motion to suppress claimed law enforcement violated his rights under the Fourth Amendment to the United States Constitution and Article 1, Section 4 of the Wyoming Constitution, he limits his argument in his brief to the Fourth Amendment of the United States Constitution. *See Ramirez v. State*, 2023 WY 70, ¶ 15, 532 P.3d 230, 234 (Wyo. 2023) (quoting *Morgan v. State*, 2004 WY 95, ¶ 20, 95 P.3d 802, 808 (Wyo. 2004)) ("[T]o invoke an independent Wyoming constitutional analysis, 'the appellant must use a precise and analytically sound approach and provide the Court with proper arguments and briefs to ensure the future growth of this important area of law.'").

3092, 3097, 49 L. Ed. 2d 1000 (1976)); *see also Hunnicutt-Carter v. State*, 2013 WY 103, ¶ 17, 308 P.3d 847, 852 (Wyo. 2013).

[¶11] Generally, law enforcement is justified in seizing property if it is in a lawful arrestee's possession and cannot be left safely at the scene of the arrest. *See Illinois v. Lafayette*, 462 U.S. 640, 646–47, 103 S. Ct. 2605, 2609–10, 77 L. Ed. 2d 65 (1983) (finding it is reasonable for police to take property found on the person or in the immediate possession of a lawful arrestee). However, seizing that property and conducting an inventory search cannot be a bad faith pretext for general investigatory rummaging. *Id.*; *see also United States v. Haro-Salcedo*, 107 F.3d 769, 772–73 (10th Cir. 1997) (citing *Florida v. Wells*, 495 U.S. 1, 4, 110 S. Ct. 1632, 1635, 109 L. Ed. 2d 1 (1990)) ("An inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence, but rather an administrative procedure designed to produce an inventory."). The government bears the burden of demonstrating the reasonableness of seizing personal property and showing the inventory exception to the warrant requirement applies. *Speten v. State*, 2008 WY 63, ¶ 16, 185 P.3d 25, 30 (Wyo. 2008); *United States v. Taylor*, 592 F.3d 1104, 1107 (10th Cir. 2010).

[¶12] Mr. Serini contends the State failed to meet its burden of showing the search and seizure of his backpack was reasonable. He claims law enforcement's seizure of his backpack violated the Fourth Amendment because law enforcement took his backpack as a pretext for a search. He argues law enforcement's rationale for seizing his backpack—to ensure safekeeping of his property and to avoid liability if anything happened to the property—is belied by the fact law enforcement only took his backpack and chose to leave his bike behind at the scene of his arrest. The State argues the officers seized the backpack pursuant to Cheyenne Police Department's policy, and they did not have a pretextual purpose for the seizure. The State claims law enforcement's seizure of the backpack did not violate the Fourth Amendment because they took it for safekeeping and as part of their community caretaker function. We agree with the State.

[¶13] Here, law enforcement did not act in bad faith or solely for the purpose of further investigation. As the district court found, "[o]utside safeguarding [Mr. Serini's] property, Officer Lucero took no special or fixated interest in [Mr. Serini's] backpack." The Cheyenne Police Department Field Manual provides:

> All property/evidence that has been discovered, collected, or received in connection with an officer's official duties, and to be stored in the custody of the Cheyenne Police Department, shall be inventoried and properly documented[.]

4

Officer Lucero testified it is department policy to take and log personal property for safekeeping, especially when the individual is homeless.[2] He testified the police department inventories personal property whenever it is taken into the jail for safekeeping to protect law enforcement from allegations of stolen, broken, or misplaced property, and to ensure there is nothing that could possibly explode, mold, or cause damage to anything or anyone.

[¶14] Officer Lucero knew Mr. Serini was homeless. He testified his immediate concern was having someone retrieve Mr. Serini's personal belongings before transporting him to the jail. Officer Lucero repeatedly offered to contact Mr. Serini's girlfriend or somebody else to come retrieve his belongings, but Mr. Serini stated he did not know anyone's phone numbers. Officer Lucero spoke with another officer at the scene about transporting Mr. Serini's bike, but none of the officers had the ability to transport the bike. Officer Lucero testified he read Mr. Serini's body language to indicate Mr. Serini did not know what to do about his personal belongings, so "to try and help him out," they transported his backpack to the police station. Officer McGrew testified she retrieved the backpack off the bike and transported it to the police department to log it in for safekeeping.

[¶15] Giving deference to the district court's factual findings, we agree the seizure of Mr. Serini's backpack was not a pretext for law enforcement to further investigate. Although officers left the bike at the scene of arrest, it would have been improper to simply leave the backpack on the bike unattended in public outside of a business. *See* 3 Wayne R. LaFave et al., *Search and Seizure: A Treatise on the Fourth Amendment* § 5.5(b) (6th ed. Nov. 2024 update) (stating seizing a suitcase or like object and taking an inventory presents no Fourth Amendment problem when a person is arrested in some public place with the suitcase or like object in their possession because "it would be clearly improper for the police to simply leave the container unattended at the scene of the arrest."). Leaving the backpack in a public place, when officers had no knowledge of the contents of the backpack, and where Mr. Serini had no privacy interest or expectation of security, subject to a friend or girlfriend possibly retrieving it at some future time, would be careless police procedure. Law enforcement testified they could not transport the bike and provided Mr. Serini with the opportunity to have someone come retrieve his belongings. They further testified they wanted to help Mr. Serini out, so they transported the backpack to be inventoried. Law enforcement acted in accordance with their standardized policy and did not act with a pretextual purpose to further investigate. The seizure of the backpack did not violate the Fourth Amendment. *See generally State v. Davis*, 408 P.3d 576, 579–83 (N.M. 2017) (holding seizure of a backpack from outside of the defendant's private

---

[2] A district court may determine the requirements of the department's policy and whether an officer complied with it from an officer's testimony. *Hunnicutt-Carter*, 2013 WY 103, ¶ 28, 308 P.3d at 854 (citing *Perry v. State*, 927 P.2d 1158, 1165 (Wyo.1996)) ("We have not required that standard police procedures with respect to impoundment and inventory searches be in writing. Instead, we have accepted testimony by police officers of the standards and their testimony that the appropriate procedures were followed in a particular situation.").

residence when it was in defendant's possession immediately before his arrest and performing an inventory search was reasonable and did not violate the Fourth Amendment). The district court did not err when it denied the motion to suppress.

## **CONCLUSION**

[¶16] The district court did not err in denying Mr. Serini's motion to suppress. The State met its burden of establishing law enforcement seized and searched Mr. Serini's backpack in accordance with a standardized police department policy, and the inventory exception to the general warrant requirement applied. Affirmed.